# 96 DTA 93

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE PONCE Y AIBONITO
## PANEL I

LYDIA RODRIGUEZ CARABALLO, ET AL.
Demandantes-Recurridos

v.

LEASEWAY OF PUERTO RICO, INC., Y CORPORACION INSULAR DE SEGUROS
Demandados-Peticionarios

v.

AUTORIDAD DE ENERGIA ELECTRICA
Tercero Demandado

Núm. KLCE-96-00345

San Juan, Puerto Rico, a 24 de abril de 1996

Panel integrado por su presidente, Juez Sánchez Martínez
y los Jueces Córdova Arone y Segarra Olivero

Sánchez Martínez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

A la petición de *certiorari*, no ha lugar.

Leaseway of Puerto Rico, Inc. le arrendó un camión a la Autoridad de Energía Eléctrica. Un día, mientras un empleado de la Autoridad movía el camión en el lugar de trabajo, con las ruedas del camión pilló unas mangueras que golpearon violentamente al demandante Miguel Zayas Caraballo, quien en ese momento estaba laborando también para la Autoridad bajo un programa de adiestramiento en el empleo de la Administración de Derecho al Trabajo. Como resultado del accidente se alega que el obrero Zayas Caraballo quedó totalmente incapacitado y que se encuentra recibiendo tratamiento de la Corporación del Fondo del Seguro del Estado.

La ex-esposa, el obrero Zayas Caraballo y los hijos menores de ambos instaron la presente acción de daños contra Leaseway y la Corporación Insular de Seguros como aseguradora del camion. Leaseway y la Corporación Insular de Seguros dedujeron demanda contra tercero contra la Autoridad a base que en la demanda se alegaba que había sido la operación negligente del camión lo que produjo el accidente, razón por la cual ésta sería responsable de los daños sufridos por los demandantes.

La Autoridad presentó una moción de sentencia sumaria alegando que era patrono estatutario del obrero Zayas Caraballo y que, por ende, tenía inmunidad contra este tipo de acción. Aunque Leaseway y la Corporación Insular de Seguros aceptaron que la Autoridad es un patrono estatutario del obrero Zayas Caraballo, se opusieron a la desestimación de la acción contra la Autoridad porque, según aquellas, en el contrato de arrendamiento del camión existía un relevo de responsabilidad a favor de Leaseway por el exceso de los límites de la póliza. Leaseway y la Corporación Insular de Seguros también presentaron, por su parte, una moción de sentencia sumaria solicitando la desestimación de la acción a base de que la responsabilidad que impone a los dueños de vehículos de motor la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1751, es una

responsabilidad vicaria y toda vez que la Autoridad es un patrono estatutario no existe una causa de acción contra la Autoridad ni, por ende, contra Leaseway y la Corporación Insular de Seguros. La parte demandante se opuso a ambas mociones de sentencia sumaria.

Al resolver la moción de sentencia sumaria de la Autoridad, el Tribunal de Primera Instancia, Sala Superior de Ponce, concluyó que la Autoridad de Energía Eléctrica era, en efecto, un patrono estatutario a tenor con la Ley de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de mayo de 1935, según enmendada, 11 L.P.R.A. sec. 1 *et seq*. Ante nosotros, esta determinación no está en controversia. El tribunal *a quo*, sin embargo, denegó las mociones. Decidió que la Autoridad debía permanecer en el pleito porque ésta se obligó contractualmente *"a defender y mantener libre de responsabilidad a Leaseway por cualquier responsabilidad y cuantía de dinero que se imponga en exceso de los límites de la póliza de seguro"*. Resolución, Apéndice de la Petición, a las págs. 108-9.

Asimismo, al resolver la moción de sentencia sumaria de Leaseway y la Corporación Insular de Seguros el tribunal *a quo* se negó a desestimar la acción contra éstas a base de que hacerlo sería extenderle a un tercero la inmunidad del patrono estatutario. El tribunal equiparó los hechos de este caso al de los contratistas del patrono estatutario a quienes el Tribunal Supremo se ha negado a extenderle la inmunidad de éste. El tribunal sostuvo, además, que la responsabilidad de Leaseway y la Corporación Insular de Seguros emana de la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, *supra*, la cual requiere establecer solamente quién es el dueño del vehículo y si el operador del mismo obtuvo previamente la autorización de su dueño para operarlo. Bajo estos criterios, Leaseway y la Corporación Insular de Seguros responden por los daños causados al obrero Zayas Caraballo por la operación negligente del camión arrendado. De esta resolución es que recurren Leaseway y la Corporación Insular de Seguros. Por los fundamentos que prosiguen confirmamos.

Al tomar su decisión, el tribunal *a quo* descansó en que estaban presentes en las alegaciones de las partes los dos elementos que a tenor con la referida Sec. 13-101 es necesario establecer para que se active la norma de responsabilidad del dueño de un vehículo de motor por los daños ocasionados con éste a otra persona, a saber: (1) quién es el dueño del vehículo y (2) si el operador del mismo obtuvo previamente la autorización de su dueño para operarlo. *Nieves Vélez v. Bansander Leasing Corp.*, ___ D.P.R. ___ (1994), **94 J.T.S. 115.** No hay controversia en cuanto a que Leaseway era la dueña del camión involucrado en el accidente y que la Autoridad lo operó legítimamente por medio de uno de sus empleados en virtud del contrato de arrendamiento que existía entre las partes. A los fines de la referida Sec. 13-101 debe considerarse que el conductor del camión, el coempleado Augusto (Cucho) Cintrón Medina, lo operaba con el consentimiento de Leaseway, pues nos parece obvio que siendo la Autoridad una persona no natural, sino jurídica, la tarea de conducir el camión recaería siempre en alguno de sus empleados. La conducción de un vehículo por un tercero (el coempleado) autorizado por la persona (la Autoridad) a quien el dueño (Leaseway) se lo confió, equivale a la posesión autorizada del automóvil por dicho tercero. *McGee Quiñones v. Palmer,* 91 D.P.R. 464, 469 61964).

La responsabilidad dimanante de la referida Sec. 13-101 es vicaria. *Nieves Vélez v. Bansander Leasing Corp., supra*. En el contexto de la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, el concepto *"responsabilidad vicaria"* significa que la obligación que impone el Art. 1802 del Código Civil al operador de un vehículo de motor por los daños ocasionados a otra persona por la operación negligente del mismo, es transferible al dueño del vehículo si el perjudicado pudiera establecer que el operador del mismo lo hizo con la previa autorización del dueño. Por ser vicaria esta responsabilidad, la obligación de indemnizar es subsidiaria y contingente, es decir, dependerá de que primero se establezca la obligación de indemnizar por parte del operador del vehículo de motor, aunque éste no hubiere sido demandado. Si lo principal no existe, es decir, la obligación de indemnizar por parte del operador del vehículo de motor, lo subsidiario tampoco. ▆ Por esta misma razón, si Leaseway no fuera responsable de los daños como dueña del camión tampoco su aseguradora Corporación Insular de Seguros lo sería. *Quiñones v. Tropical Beverages,* 74 D.P.R. 364, 372 (1953); *Bithorn v. Santana,* 68 D.P.R. 300, 304 (1948).

No tenemos duda de que la Autoridad, por ser patrono estatutario del obrero lesionado, no debería responder por los daños sufridos por éste en el accidente del trabajo. Leaseway y la Corporación Insular de Seguros aseguran que bajo este criterio tampoco ellas deberían responder por tratarse de una situación de inexistencia de causa de acción. *Admor. F.S.E. v. Flores Hnos. Cement Prods.*, 107

D.P.R. 789, 791-93 (1978). Sin embargo, el problema que confrontan Leaseway y la Corporación Insular de Seguros es que parten de la premisa de que la inmunidad patronal se extiende al conductor del camión, o sea, al señor Augusto (Cucho) Cintrón Medina, quien era un co-empleado del obrero Zayas Caraballo. Y ahí está el detalle.

Como se sabe, la inmunidad patronal *"no se extiende a directores, oficiales u otros empleados del patrono asegurado que no contribuyen personalmente para sufragar los gastos del Fondo [del Seguro del Estado] cuando éstos han incurrido en negligencia y han causado daños a otros empleados"*. *López Rodríguez v. Delama*, 102 D.P.R. 254, 258-59 (1974). Véase, además, *Rivera Santana v. Superior Packaging Inc.*, ___ D.P.R. ___ (1992), **92 J.T.S. 165**, a la pág. 10166 *et seq*. A los fines de la Ley de Compensaciones por Accidentes del Trabajo, el co-empleado Augusto (Cucho) Cintrón Medina, conductor del camión, es un *"tercero"*. *Id*. Aunque éste no fue incluido como demandado en esta acción, nada impedía que la acción se dirigiera directamente contra Leaseway y la Corporación Insular de Seguros, como en efecto se hizo, por la responsabilidad vicaria que les impone a éstas la referida Sec. 13-101 como dueña y aseguradora del camión.

Considerando que bajo el actual estado de derecho, Leaseway, como titular del camión, responde por los daños ocasionados a los demandantes como resultado de la negligencia del conductor del mismo, *Nieves Vélez v. Bansander Leasing Corp., supra*, debemos resolver si la Autoridad puede escapar a la responsabilidad de compensar los daños que se causaren con el camión al amparo del contrato de arrendamiento con Leaseway. De acuerdo con el contrato, Leaseway se obligó a mantener una póliza de responsabilidad pública que cubriera los daños que se ocasionaren en la operación del camión hasta $100,000 por un perjudicado o $300,000 por dos o más perjudicados en el mismo evento. Contrato, cláusula 10, inciso (a), Apéndice de la Petición, a la pág. 115. En el inciso (e) de la misma cláusula del contrato, la Autoridad se obligó a defender y asumir toda la responsabilidad que se le impusiera a Leaseway en exceso de los límites de la póliza:

*"Regardless of the provisions of any applicable insurance policy, Customer [se refiere a la Autoridad] agrees to indemnify, defend and hold harmless Leaseway, its officers, employees, agents and insurers, against all claims, liabilities losses and expenses (including Leaseway's strict liability in tort and liabilities arising under any applicable "no-fault" law) for personal injuries or death and for loss or damage to the property of any person (including Leaseway, Customer and their respective officers, employees and agents), except to the extent of recovery under any insurance policy provided under this Agreement, arising out of (i) ownership, maintenance, operation or use, including from Leaseway's sole negligence or otherwise, (ii) the conduct of Customer's business, and (iii) Customer's failure to comply with the provisions of this Paragraph 10 and of any insurance policy provided under this Paragraph 10."*

Este tipo de cláusula, en palabras del Tribunal Supremo, permite a una parte ser resarcida y protegerse de cierto riesgo colocándolo sobre la otra; así garantiza que será compensada por cualquier pérdida o negligencia. Al fijarse esa responsabilidad contractual las partes anticipan el ámbito de sus obligaciones y planifican de acuerdo a ello. Obliga el reembolso por cualquier pérdida, daño o responsabilidad en que la otra persona incurra, mientras actúe a su requerimiento o beneficio. Ese resultado se impone aun cuando podría no ser primariamente responsable --en el sentido de culpabilidad--; lo es contractualmente. *Torres Solís v. A.E.E.*, ___ D.P.R. ___ (1994), **94 J.T.S. 89**, a la pág. 12041.

En Torres Solís el Tribunal, al evaluar una cláusula casi idéntica a la 10(e) en cuestión, resolvió que de su faz, dicha cláusula contractual de indemnización y relevo pactada recíprocamente por las partes en el caso, no atentaba contra el orden público ni la ley y que, además, su lenguaje era claro, terminante e inequívoco. *Id*. El Tribunal tomó en cuenta que en dicho caso no existía una desproporción en la fuerza de negociación entre los contratantes (precisamente la Autoridad de Energía Eléctrica y la compañía telefónica) por lo que se encontraban en igualdad de condiciones y ninguna de las partes se encontraba obligada a aceptar el relevo de responsabilidad por negligencia de la otra parte. Según el Tribunal, este tipo de cláusula es bilateral, en que cada una acuerda relevar de responsabilidad a la otra, e indemnizarla en cualquier suma que venga obligado a pagar. *Id*.

En el caso de autos no hay indicios que nos permitan afirmar que existió desproporción en la

fuerza de negociación entre los contratantes al punto de que la Autoridad hubiera estado obligada a aceptar el relevo de responsabilidad a favor de Leaseway. Al igual que en *Torres Solís*, estamos pues, ante un caso de responsabilidad contractual en el que la Autoridad no puede oponerle a Leaseway su condición e inmunidad de patrono estatutario. De todo lo anterior, nos parece evidente la corrección de la resolución recurrida. En el fondo, aunque no expresado en estas mismas palabras, el tribunal de primera instancia resolvió que los incisos (a) y (e) de la cláusula 10 del contrato constituyen una renuncia de la Autoridad a su inmunidad patronal frente a reclamaciones por daños de sus obreros y familiares contra la arrendadora de equipo automotriz tomado en arrendamiento por la Autoridad.

Para resumir, concluimos lo siguiente: (1) que al ocurrir el accidente en cuestión el chofer del camión lo conducía con la autorización de su dueño, Leaseway; (2) que el conductor del camión no era patrono del obrero perjudicado sino un tercero para fines de la Ley de Compensaciones por Accidentes del Trabajo; (3) que a tenor con la Sec. 13-101 de la Ley de Vehículos y Tránsito de Puerto Rico, por ser dueña del camión, Leaseway tiene responsabilidad vicaria por los daños ocasionados por el chofer de la Autoridad mediando culpa o negligencia; (4) que la Autoridad es patrono estatutario del obrero lesionado y del conductor del camión arrendado a Leaseway; (5) que en el contrato de arrendamiento del camión otorgado por Leaseway y la Autoridad, la arrendadora se obligó a obtener un seguro de responsabilidad pública con cubierta máxima de cien a trescientos mil dólares; (6) que la Corporación Insular de Seguros expidió la póliza según pactado; (7) que el referido contrato contiene una cláusula mediante la cual la Autoridad exime y asume la responsabilidad de Leaseway por el exceso de los referidos límites; y (8) que tales cláusulas en beneficio de Leaseway constituyen una renuncia de la Autoridad a su inmunidad patronal.

Con estos antecedentes, es que se deniega la petición de *certiorari*.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Sonia I. Pacheco Román
Secretaria General

### ESCOLIOS 96 DTA 93

**1.** No surge de la resolución recurrida ni de los documentos ante nosotros que el obrero lesionado, el demandante Zayas Caraballo, haya sido dado de alta definitiva y/o compensado mediante una decisión firme y ejecutoria del Administrador de la Corporación del Fondo del Seguro del Estado. Si el demandante Zayas Caraballo estuviese recibiendo aún los beneficios del Fondo estaría descalificado para figurar como demandante. Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 32. Este artículo de la ley dispone que el Administrador del Fondo *"se subrogará en los derechos del obrero... y podrá entablar procedimientos en contra del tercero en nombre del obrero... dentro de los noventa (90) días siguientes a la fecha en que la decisión fuere firme y ejecutoria".* Dicho artículo añade que el obrero lesionado no podrá *"entablar demanda ni transigir ninguna causa de acción que tuvieren contra el tercero responsable de los daños, hasta después de transcurridos noventa días a partir de la fecha en que la resolución del Administrador del Fondo del Seguro del Estado fuere firme y ejecutoria".*

El Tribunal Supremo ha interpretado que hasta tanto el obrero lesionado no sea dado de alta o compensado mediante decisión firme y ejecutoria y transcurra el referido plazo de noventa días, la acción que éste pudiese iniciar contra el tercero causante del daño es prematura y debe desestimarse. *Alvarado v. Calaiño Romero*, 104 D.P.R. 127 (1975). Esta norma es para dar tiempo al Administrador del Fondo para que se subrogue, si lo desea, en los derechos del obrero lesionado contra el tercero causante del accidente del trabajo. *Franco v. Mayaguez Building, Inc.*, 108 D.P.R. 192 (1978). Por eso es que el término de prescripción de su acción independiente por daños contra el tercero responsable del accidente del trabajo no comienza a decursar para él hasta después de transcurrido el plazo de noventa días a partir de la fecha en que la resolución del Administrador del Fondo fuere firme y ejecutoria. *El Día, Inc. v. Tribunal Superior*, 104 D.P.R. 149 (1975). Ni siquiera el Administrador del Fondo puede instar una acción de subrogación antes de que sea firme y ejecutoria su decisión pues se trata de una situación de verdadera inexistencia de causa de acción. *De Jesús v. Guerra Guerra*, 105 D.P.R. 207 (1976). En cambio, la acción de sus hijos y de la ex-esposa (y en casos apropiados de la sociedad legal de gananciales) puede proseguir su curso normal pues éstos tienen una reclamación cuyo plazo prescriptivo no queda afectado por la ausencia de una decisión firme y ejecutoria del Administrador del Fondo. *Franco v. Mayaguez Building, Inc., supra.*

**2.** En el caso de autos no se reclama por daños producidos por un desperfecto del camión atribuible al arrendador del mismo. Si ese fuera el caso, no es necesario que adelantemos nuestro criterio respecto a si la norma podría variar.