JUAN PABLO ALVARADO, ETC., demandantes y recurrentes, *v.* ERNESTO CALAIÑO ROMERO, CONSTRUCTORA SANTIAGO, INC., AMERICAN CASUALTY COMPANY, demandados y recurridos.

*Número:* R-74-51          *Resuelto:* 23 de septiembre de 1975

128

*R. Elfrén Bernier* y *Plinio Pérez Marrero,* abogados de los re-currentes; *González & Rodríguez,* abogados de los recurridos; *Jorge Márquez Gómez, Miguel A. Guzmán Soto, Moisés García Viera* y *Francisco Falú Lebrón,* abogados del Administrador del Fondo del Seguro del Estado.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El 19 de octubre de 1966 el obrero recurrente sufrió un accidente de automóvil en que perdió tres dedos de la mano izquierda por la alegada negligencia de un tercero. El Administrador del Fondo del Seguro del Estado aceptó que se trataba de un accidente del trabajo y resolvió que el obrero había sufrido un 80% de pérdida de las funciones fisiológicas de la mano. La Comisión Industrial, luego del correspondiente informe médico, confirmó esta determinación, la que se le notificó al obrero el 16 de marzo de 1967. El obrero no solicitó luego la vista pública a que le da derecho el Art. 10 de la Ley Núm. 45 de 1935, según enmendado, 11 L.P.R.A. sec. 11.

El 28 de junio de 1967, el obrero lesionado dedujo demanda contra el tercero alegadamente responsable de su lesión. Mientras se tramitaba la referida causa, el obrero regresó al Fondo debido a complicaciones emocionales surgidas como consecuencia del accidente. Esta vez el Administrador decidió que el recurrente tenía derecho a compensación correspondiente a la pérdida de un 20% de las funciones fisiológicas generales, acreditándose la suma pagada por el Fondo del Seguro del Estado como consecuencia de la determinación anterior.

El 26 de octubre de 1971, al agravarse la condición emocional del recurrente, el Fondo aumentó el grado de incapacidad fisiológica general del obrero en un 10%. En esta ocasión, el Fondo instó demanda por primera vez, el 22 de diciembre de 1971, contra el referido tercero. Luego de consolidarse ambos casos, el tribunal de instancia dictó sentencia a favor del obrero, pero dispuso que éste debía devolverle al Fondo la

cantidad de $8,152.50 por concepto de subrogación. Sostiene el obrero ante nos que el Fondo perdió su derecho a subrogarse por no actuar contra el tercero dentro del término que alegadamente prescribe la ley.

## I

El Art. 31 de nuestra Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 32, dispone en su parte pertinente:

"En los casos en que la lesión, enfermedad profesional o la muerte que dan derecho de compensación al obrero, empleado o sus beneficiarios, de acuerdo con este Capítulo, le hubiere provenido bajo circunstancias que hicieren responsables a tercero de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte dentro del año subsiguiente a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo del Seguro del Estado, y éste podrá subrogarse en los derechos del obrero, empleado o sus beneficiarios para entablar la misma acción en la forma siguiente:

Cuando un obrero o empleado lesionado, o sus beneficiarios en casos de muerte, tuvieren derecho a entablar acción por daños contra tercero, en los casos en que el Fondo del Seguro del Estado, de acuerdo con los términos de este Capítulo, estuviere obligado a compensar en alguna forma, o a proporcionar tratamiento, el Administrador del Fondo del Seguro del Estado se subrogará en los derechos del obrero o empleado, o de sus beneficiarios, y podrá entablar procedimientos en contra del tercero en nombre del obrero o empleado, o de sus beneficiarios, dentro de los noventa (90) días siguientes a la fecha en que la decisión fuere firme y ejecutoria, y cualquier suma que como resultado de la acción, o a virtud de transacción judicial o extrajudicial se obtuviere en exceso de los gastos incurridos en el caso se entregará al obrero o empleado lesionado o a sus beneficiarios con derecho a la misma. El obrero o empleado o sus beneficiarios serán parte en todo procedimiento que estableciere el Administrador bajo las disposiciones de esta sección, y será obligación

del Administrador notificar por escrito a las mismas de tal procedimiento dentro de los cinco (5) días de iniciada la acción.

Si el Administrador dejare de entablar demanda contra la tercera persona responsable, según se ha expresado en el párrafo anterior, el obrero o empleado, o sus beneficiarios quedarán en libertad completa para entablar tal demanda en su beneficio, sin que vengan obligados a resarcir al Fondo del Seguro del Estado por los gastos incurridos en el caso.

El obrero o empleado lesionado ni sus beneficiarios podrán entablar demanda ni transigir ninguna causa de acción que tuvieren contra el tercero responsable de los daños, hasta después de transcurridos noventa días a partir de la fecha en que la resolución del Administrador del Fondo del Seguro del Estado fuere firme y ejecutoria.

. . . . . . . ."

Existen diferentes sistemas de subrogación en la legislación norteamericana, en que originalmente se inspiró nuestra Ley de Compensaciones a Obreros por Accidentes del Trabajo, pero nuestro estatuto ha desarrollado rasgos propios que ayudan a interpretarlo rectamente. En Estados Unidos, por ejemplo, existe un minúsculo grupo de estados donde no se permite la subrogación; en otros pocos se autoriza de modo absoluto, constituyendo el asegurador el único que puede demandar al tercero; en otros, tanto el asegurador como el asegurado pueden incoar la demanda; y en algunos se establece un orden para demandar, permitiéndosele en varios estados al asegurador demandar en primer término y en otros invirtiéndose el turno. 2 Larson, *Workmen's Compensation*, secs. 74.10–74.16. Nuestro estatuto pertenece a esta última categoría, asemejándose en este particular especialmente a la legislación de Maryland. *Ann. Code of Md.*, Art. 101, Sec. 58 (1974 Cum. Supp.).

Las leyes de compensación por accidentes del trabajo no se diseñaron para inmunizar a terceros. *Sanstad v. Ind. Acc. Com.*, 339 P.2d 943 (Cal. 1959). Tampoco fue el propósito general permitirle al obrero recobrar dos veces por

el mismo daño. De estos principios es que parte fundamentalmente el concepto de la subrogación, cuyo impulso ideal básico, con las variantes estatutarias señaladas y otras más, es reembolsarle al asegurador lo pagado, lo que surte el efecto de reducir las primas, y permitir que el lesionado obtenga cualquier suma que se recobre contra el tercero en exceso de lo pagado por el asegurador. Lasky, H., *Subrogation under the California Workmen's Compensation Laws—Rules, Remedies and Side Effects*, 12 Santa Clara Lawyer 1, 2–6 (1972).

■ Nuestro estatuto, como se ha visto, contiene, sin embargo, una variante sustancial de este esquema. El Fondo del Seguro del Estado puede, en primer término, entablar procedimiento en contra del tercero dentro de los noventa días siguientes a la fecha en que su decisión fuere "firme y ejecutoria" pero, de no hacerlo, el obrero o sus beneficiarios "quedarán en libertad completa para entablar tal demanda en su beneficio, sin que vengan obligados a resarcir al Fondo del Seguro del Estado por los gastos incurridos en el caso." En Puerto Rico, por tanto, se admite expresamente la mayor compensación del obrero si el Fondo del Seguro del Estado no ejerce a tiempo su derecho a la subrogación. Esta disposición se encamina a todas luces a fomentar el ejercicio diligente por el Fondo del Seguro del Estado de tal derecho. No hemos hallado una disposición comparable en Estados Unidos. Representa una característica autóctona de nuestro derecho de compensación a obreros.

En el caso presente, el Fondo dejó transcurrir más de cuatro años después de la decisión inicial para ejercer sus derechos de subrogación. Lo hizo luego de emitirse la decisión en recidiva de 26 de octubre de 1971. Lo planteado aquí inicialmente, por tanto, en lo que toca a la relación del Fondo y el obrero, es si el hecho de subrogarse a tiempo después de una decisión en recidiva le permite al Fondo recobrar, no sólo sus gastos a consecuencia de dicha decisión, sino también sus

gastos anteriores. Compárese: *Admor. Fondo del Estado* v. *Northern Assur.*, 98 D.P.R. 253 (1970).

Resolver lo segundo entraña dejar sin efecto el mandato legislativo que le fija un término perentorio al Fondo para demandar al tercero, so pena de que el lesionado pueda actuar entonces sin obligación de resarcir al Fondo por los gastos incurridos. No hallamos nada en el historial legislativo del citado Art. 31 que autorice tal emasculación de nuestro estatuto. Véase la Ley Núm. 70 de 15 de junio de 1955, la que añade la frase "firme y ejecutoria" para alterar el efecto de *Moreno* v. *Penzol*, 73 D.P.R. 12 (1952); *Diario de Sesiones*, vol. VI, to. I, pág. 50 (1955); *Ibid*, vol. VI, to. III, pág. 1785 (1955).

■ Si bien el Fondo no tiene derecho a que un obrero le resarza por los gastos incurridos a causa de determinada resolución cuando el Fondo ha dejado expirar el término para subrogarse en los derechos del lesionado, esto no quiere decir, sin embargo, que la referida agencia está impedida para siempre de intentar recobrar los gastos en que incurra bajo resoluciones en recidiva respecto a las cuales se ejercite a tiempo el derecho a la subrogación. En otras palabras, no hay nada en el orden natural de las cosas que prohíba la emisión en casos de compensación a obreros, como en los casos de alimentos, de varias resoluciones firmes y ejecutorias.

Esta interpretación está más de acuerdo con el propósito de los estatutos de subrogación y de nuestra propia ley. El Fondo puede estimar en cierto caso que la compensación envuelta inicialmente no es de suficiente importancia como para justificar el ejercicio de su derecho a la subrogación. En dicha situación es forzoso cumplir la voluntad legislativa de que no tenga que devolverse la referida compensación inicial. Puede suceder, sin embargo, que el caso se complique, como sucedió aquí, y el Fondo tenga que pagar en recidiva una compensación adicional sustancial. ¿Por qué no permitirle al Fondo que intente obtener el reembolso de lo pagado adicionalmente?

¿Por qué extenderle al obrero nuevamente, en ausencia de una directriz legislativa clara, el beneficio de una compensación doble, con su indeseable impacto actuarial? Véase: *Robles Menéndez* v. *Tribunal Superior*, 85 D.P.R. 665 (1962).

A la luz de las normas expresadas, el recurrente no tiene que resarcir al Fondo del Seguro del Estado por compensación alguna recibida en virtud de decisiones emitidas antes de 26 de octubre de 1971. La sentencia en este sentido del Tribunal Superior no es clara. En su demanda de 22 de diciembre de 1971, el Fondo alegó haber incurrido en gastos de $12,041.50. La sentencia le concedió $8,152.50. Debe devolverse el caso al tribunal de instancia para la modificación de la sentencia, si es que ello fuere necesario, de conformidad con lo aquí expuesto. No habría que modificar la sentencia si la suma concedida representa los gastos incurridos o por incurrirse en virtud de la decisión en recidiva de 26 de octubre de 1971.

## II

■ Se habrá advertido, no obstante, que el obrero recurrente radicó su demanda prematuramente, antes de transcurrir el término durante el cual tenía derecho el Fondo a subrogarse inicialmente en los derechos del obrero. El obrero radicó su demanda poco después de expirar los noventa días de notificársele la resolución de la Comisión Industrial, emitida a base del informe médico rendido. El Art. 10 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 11, dispone, no obstante, que el obrero que no esté conforme con la resolución dictada a base del informe médico podrá solicitar la celebración de una vista pública ante la Comisión dentro de un término que no excederá de treinta días. No es hasta la expiración de dichos treinta días, por tanto, que se convierte en ejecutoria y firme la decisión del Administrador del Fondo.

■ ¿Qué efecto tiene sobre la demanda radicada aquí por el obrero, sus hijos y la sociedad de gananciales del recurrente y su esposa el hecho de que la acción se instó prematuramente? En lo que toca a la acción de la sociedad de gananciales y de los hijos, hemos resuelto que nuestro estatuto de Compensaciones a Obreros no les impide demandar al tercero antes de expirar el plazo reservádole al Fondo para subrogarse en los derechos del lesionado. Véanse: *Gallart Mendía* v. *González Marrero*, 95 D.P.R. 201 (1967) y nuestras expresiones posteriores en *Robles Ostolaza* v. *U.P.R.*, 96 *D.P.R.* 583 (1968).

■ En lo que respecta a la acción del obrero, existe *dicta* al efecto de que si se entabla prematuramente es ineficaz y nula. *Negrón* v. *Comisión Industrial*, 76 D.P.R. 301 (1954). Si convirtiéramos en doctrina firme tal interpretación, sin embargo, no estaríamos cumpliendo a cabalidad los fines de la legislación que nos ocupa. La declaración de nulidad podría proteger al tercero indebidamente, cuando lo que se desprende de nuestro estatuto es el deseo de proteger los derechos de subrogación del Fondo. Consideramos más acorde con la ley resolver que las demandas radicadas prematuramente son anulables, en vez de nulas. Unicamente el Fondo puede, por supuesto, requerir su anulación mediante la radicación en tiempo de su acción de subrogación y la correspondiente súplica de declaración de nulidad. En vista de que el Fondo dejó transcurrir más de cuatro años después de convertirse en firme y ejecutoria su decisión inicial, no se afecta el resultado expuesto en la primera parte de esta opinión.

### III

■ Se habrá notado también que este caso envuelve exclusivamente la determinación de los derechos del obrero y otros codemandantes frente al Fondo del Seguro del Estado, dentro de las circunstancias particulares de esta controversia. El tercero no ha recurrido ante nos de la sentencia dictada.

Hubo aquí, además, una sola sentencia y la demanda se enmendó varias veces para alegar el agravamiento del daño. No hay ocasión de expresarse en consecuencia sobre la interesante cuestión de si una sentencia obtenida contra un tercero tras demanda iniciada dentro del año de convertirse en firme y ejecutoria la decisión del Administrador en un caso, 11 L.P.R.A. sec. 32, primer párrafo, representa base suficiente para oponer la defensa de cosa juzgada o la de prescripción cuando se le demanda de nuevo por haber ocasionado perjuicios posteriores al daño inicial. Baste decir que el asunto es objeto de debate, ofreciendo la jurisprudencia, la doctrina y las leyes bajo distintos regímenes de derecho diversas soluciones a este problema de sencillez engañosa. En derecho francés, por ejemplo, se ha afirmado que no existe la identidad de objeto requerida para que una sentencia constituya cosa juzgada cuando luego sobrevienen mayores daños causados por los hechos originales. Mazeaud, Mazeaud et Tunc, *Traité Théorique et Practique de la Responsabilité Civile*, 5<sup>e</sup> éd., Paris, 1958, sec. 1737, págs. 712-713. En derecho alemán, si un acto ilícito produce una enfermedad al parecer transitoria, pero que luego evoluciona para convertirse en enfermedad crónica grave, la prescripción sólo puede empezar al conocerse este último dato. Enneccerus, *Derecho de Obligaciones*, 15ª ed., Barcelona, vol. II, 2ª Parte, (1966), págs. 1163-1164. En derecho español, existe conflicto de criterios. Borrell Maciá, *Responsabilidades Derivadas de Culpa Extracontractual Civil*, Barcelona, 1942, pág. 276; Jiménez Asenjo, *Sobre el Alcance Real de la Cosa Juzgada*, 1 Revista General de Legislación y Jurisprudencia 63 (1948). En derecho común, indebidamente aplicado a estas materias, rige generalmente la regla de la indemnización por una sola vez, sin posibilidad de nuevo resarcimiento cuando el daño se agrava, pero este criterio ha sido severamente criticado tanto en Estados Unidos, 2 Harper and James, *The Law of Torts*, sec. 25.2, como en Inglaterra, Salmond on the *Law of Torts*, 11th

ed., London, 1953, págs. 185-186. Algunos tribunales en Estados Unidos siguen ya el punto de vista de Harper y James, aun en ausencia de legislación. *Brocker and Supply Co.* v. *Mashburn*, 301 A.2d 501 (Md. 1973).

Por los fundamentos expuestos, *se revocará la sentencia dictada y se devolverá el caso al tribunal de instancia para procedimientos conforme con esta opinión.*

El Juez Asociado, Señor Jorge Díaz Cruz, disiente con opinión separada. El Juez Asociado, Señor Carlos V. Dávila, concurre en el resultado sin opinión.

—O—

Voto disidente del Juez Asociado Señor Díaz Cruz.

San Juan, Puerto Rico, a 23 de septiembre de 1975

El Art. 31 de la Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. sec. 32) dispone: "Cuando un obrero o empleado lesionado, o sus beneficiarios en casos de muerte, tuvieren derecho a entablar acción por daños contra tercero, en los casos en que el Fondo del Seguro del Estado, de acuerdo con los términos de este Capítulo, estuviere obligado a compensar en alguna forma, o a proporcionar tratamiento, el Administrador del Fondo del Seguro del Estado se subrogará en los derechos del obrero o empleado, o de sus beneficiarios, y podrá entablar procedimientos en contra del tercero en nombre del obrero o empleado, o de sus beneficiarios, dentro de los noventa (90) días siguientes a la fecha en que la decisión fuere firme y ejecutoria, y cualquier suma que como resultado de la acción, o a virtud de transacción judicial o extrajudicial se obtuviere en exceso de los gastos incurridos en el caso se entregará al obrero o empleado lesionado o a sus beneficiarios con derecho a la misma."

La opinión de mayoría desatiende el concepto legislado de "firme y ejecutoria" al considerar la reclamación de recidiva como *nuevo caso* para el que empezará a correr (por

138

segunda vez) el término de 90 días de subrogación. La interpretación niega respaldo a la básica integridad procesal que rechaza la decisión de cuestiones fragmentadas. Según la recidiva en el campo médico legal reabre todo el proceso desde su inicio a ulterior consideración integral, sin que haya lugar al fraccionamiento en la patología del obrero lesionado, la secuencia procesal ha de seguir la secuencia clínica. El hilo de continuidad que une todos los elementos y desarrollos en cada caso no ha de ser cercenado.

Si el reconocimiento y compensación de una recidiva necesariamente implica la reapertura del caso, pierden finalidad no sólo la primera determinación médica sino la decisión original del Administrador quien tendrá a su disposición el término de 90 días para subrogarse y recobrar del tercero todo lo pagado.

La opinión de mayoría repudia la dádiva con fondos públicos que resultaría de permitir al lesionado "recobrar dos veces por el mismo daño." El principio debe mantenerse sin importar la cuantía, prescindiendo de la arbitraria distinción entre antes y después de la recidiva.

Autorizaría al Administrador del Fondo a recobrar del tercero causante de los daños absolutamente todos los gastos incurridos con dineros públicos por el Fondo del Seguro del Estado, según instruye el Art. 31 de la Ley.