EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| • Peter Díaz Medina, Et Als. Corporación del Fondo del Seguro del Estado<br><br>Demandantes-Peticionarios<br><br>vs.<br><br>Transporte Cancel Inc., Et Als.<br><br>Demandados-Recurridos | Certiorari<br><br>2005 TSPR 10<br><br>163 DPR ____ |

Número del Caso: CC-2004-27

Fecha: 22 de febrero de 2005

Tribunal de Circuito de Apelaciones:

        Región Judicial de Carolina

Juez Ponente:

        Hon. Rafael L. Martínez Torres

Abogado de los Demandantes-Peticionarios:

        Lcdo. José E. Vila Barnés

Abogado de los Demandados-Recurridos:

        Lcdo. Antonio Marrero Candelaria

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Peter Díaz Medina, Et Als.;
Corporación del Fondo del
Seguro del Estado

    Demandantes-Peticionarios

                                CC-2004-027     Certiorari

        vs.

Transporte Cancel Inc., Et Als.

    Demandados-Recurridos

SENTENCIA

San Juan, Puerto Rico, a 22 de febrero de 2005.

El Sr. Peter Díaz (en adelante Díaz) acudió ante nos para impugnar los dictámenes de los foro *a quo* que desestimaron su demanda de daños y perjuicios por entender éstos que los graves daños sufridos por Díaz se habían indemnizado mediante una transacción extrajudicial válida.

Examinados los escritos de todas las partes, concluimos que la transacción en cuestión es nula e inoficiosa, por violar lo dispuesto en el Art. 31 de la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 del 18 de abril de 1935, según enmendada, 11 L.P.R.A. sec. 32.

Por ende, se revocan las sentencias del Tribunal de Primera Instancia y del Tribunal de

Apelaciones en el caso de autos, y se devuelve el caso al foro de instancia para que continúen los procedimientos conforme a lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Fuster Berlingeri emitió una Opinión de Conformidad, a la que se unen el Juez Presidente señor Hernández Denton y la Juez Asociada señora Fiol Matta. Los Jueces Asociados, señor Corrada del Río y señor Rivera Pérez concurren sin opinión escrita. El Juez Asociado señor Rebollo López emitió Opinión Disidente. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.


                          Aida Ileana Oquendo Graulau
                          Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Peter Díaz Medina, Et Als.;
Corporación del Fondo del
Seguro del Estado

    Demandantes-Peticionarios

                          CC-2004-027

Certiorari

        vs.

Transporte Cancel Inc., Et Als.

    Demandados-Recurridos

Opinión de Conformidad emitida por el Juez Asociado señor FUSTER BERLINGERI, a la que se unen el Juez Presidente señor HERNÁNDEZ DENTON y la Juez Asociada señora FIOL MATTA.

San Juan, Puerto Rico, a 22 de febrero de 2005.

El caso de autos nos presenta la ocasión por primera vez para determinar la validez de una transacción entre un obrero lesionado en el empleo y el tercero responsable del accidente, que fue acordada antes de la determinación final del Administrador del Fondo de Seguro del Estado sobre el caso. Veamos.

I.

El 15 de mayo de 1992 el peticionario Peter Díaz (en adelante Díaz) se encontraba trabajando en los almacenes de la empresa Panasonic en Carolina, realizando labores para su patrono Multiforce Personel Services. En determinado momento ese día, un

empleado de Transporte Cancel, Inc. (en adelante Cancel) que se encontraba en el mismo lugar dejó ir hacia atrás un vagón propiedad de Cancel que atropelló a Díaz, empujándolo contra una pared en el área de recibo de mercancía.

A consecuencia de dicho accidente Díaz sufrió varias lesiones físicas graves, que le causaron un 100% de incapacidad de las funciones fisiológicas generales, y desde entonces no ha podido realizar labores remuneradas. Por haber sido éste un accidente relacionado con el trabajo, Díaz recibió tratamiento durante ocho años por el Fondo del Seguro de Estado (en adelante el Fondo), desde el día 15 de mayo de 1992 hasta el 12 de enero del 2000, cuando el Administrador del Fondo emitió su decisión final en el caso. Díaz fue dado de alta con una incapacidad de 100% de las funciones fisiológicas generales y además el Seguro Social Federal le concedió una incapacidad total.

El 9 de mayo de 2000 el Fondo por sí y en representación de Díaz presentó una demanda de daños y perjuicios por subrogación contra Cancel y su aseguradora, la General Accident Insurance Co. (en adelante la aseguradora). En dicha demanda se reclamaron daños valorados en $1,000,000 en resarcimiento por las angustias mentales, sufrimientos físicos y pérdida de ingresos de Díaz. El Fondo, por su parte, reclamó $90,137.75 por concepto del tratamiento médico brindado a Díaz.

En su contestación a la demanda, la aseguradora co-demandada presentó como defensa afirmativa que a esta

reclamación le aplicaban las figuras de aceptación como pago en finiquito; impedimento colateral; pago mediante transacción; cosa juzgada y enriquecimiento injusto. Alegó la aseguradora que Díaz, **mediante la aceptación de un pago**, había hecho un relevo total de responsabilidad a favor de la parte demandada, por lo cual estaba impedido de volver a reclamar judicialmente por los mismos hechos.

El 8 de octubre de 2002 la aseguradora y el Fondo presentaron ante el Tribunal de Primera Instancia un acuerdo de transacción y una solicitud de sentencia parcial. En dicha estipulación acordaron transigir la reclamación particular que el Fondo tenía pendiente por los gastos médicos y la compensación que le brindó a Díaz. Además, se hizo constar que no se admitía negligencia de parte de Cancel.

Luego de varios trámites procesales, el 11 de octubre de 2002, la aseguradora presentó una moción para solicitar una sentencia sumaria con respecto a la acción referente a los daños sufridos por Díaz. Planteó que el 9 de junio de 1994, sin admitir negligencia o responsabilidad de parte de Cancel, había llegado a un acuerdo extrajudicial con Díaz. En dicho acuerdo se había acordado efectuar un **pago total** por la cantidad de $15,000 para transigir enteramente la causa de acción de Díaz y se suscribió un relevo de responsabilidad en el cual Díaz relevaba para siempre a Cancel y a su aseguradora de todas las posibles causas de acción que pudiera tener a consecuencia del accidente.

Oportunamente, Díaz presentó su oposición a la solicitud de sentencia sumaria referida. Alegó, *inter alia*, que había controversia sobre la voluntariedad del consentimiento brindado al firmar la carta de relevo en cuestión. Adujo que había mediado dolo que vició su consentimiento y, mediante declaración jurada, expuso que había aceptado la alegada transacción mediante engaño, error, y sin tener un abogado que lo asesorara. Declaró que firmó el relevo que se le había presentado porque el ajustador de seguros "lo engañó" y le había informado que "eso era lo único a lo que tenía derecho". También indicó que al momento de la transacción tan sólo contaba con 22 años de edad, aún se encontraba hospitalizado y bajo tratamiento del Fondo, y que estaba muy necesitado económicamente y perturbado emocionalmente por estar tan lesionado e incapacitado para trabajar. En resumen, Díaz alegó ante el Tribunal de Primera Instancia que era necesaria la celebración de un juicio plenario, porque había una controversia sustancial de hechos en cuanto a si medió dolo y vicio de consentimiento al firmar un relevo absoluto e incondicional de sus reclamos contra Cancel. **Además, alegó que el acuerdo en cuestión era nulo, porque la Ley de Accidentes de Trabajo prohibía al obrero entablar una demanda o transigir cualquier causa de acción que tuvieren contra el tercero responsable de los daños antes de transcurridos noventa días a partir de la fecha en que fuera firme y ejecutoria la determinación final sobre el caso del Administrador del Fondo**, como había ocurrido aquí.

Finalmente, el 7 de julio de 2003, el Tribunal de Primera Instancia emitió una sentencia sumaria y resolvió que la transacción extrajudicial entre Díaz y la aseguradora de Cancel era válida, por lo cual Díaz estaba impedido de reclamarles judicialmente por haberse finiquitado totalmente su reclamación mediante transacción y relevo. Determinó que no se había probado que hubiese mediado dolo en la transacción en cuestión y que, dicha causa de acción estaba, en cualquier caso, prescrita, porque ya habían transcurrido más de cuatro años desde que se había consumado el contrato de transacción. En su determinación de hechos el foro de instancia determinó que al momento de suscribir el contrato Díaz no tenía ningún tipo de impedimento o incapacidad civil o mental y que el relevo en cuestión había sido firmado voluntariamente.

En cuanto a la alegación de que la transacción era nula toda vez que Díaz aún se encontraba bajo tratamiento del Fondo, el Tribunal de Primera Instancia determinó que quien único poseía la legitimación activa para solicitar su anulabilidad era el Fondo en protección de su derecho de subrogación.

Inconforme con la determinación del foro de instancia, Díaz presentó un recurso de apelación ante el Tribunal de Apelaciones. Alegó que había errado el Tribunal de Primera Instancia al desestimar la demanda sumariamente, habida cuenta de las controversias de hecho y de derecho que estaban presentes en el caso.

El 2 de diciembre de 2003 el foro apelativo dictó una sentencia mediante la cual confirmó la determinación del Tribunal de Primera Instancia. Determinó que el contrato de transacción firmado por Díaz contaba con los requisitos de consentimiento, objeto y causa y que no se había logrado rebatir su validez. Añadió que, de todos modos, la demanda estaba prescrita, pues habían pasado más de los cuatro años fijados por el Código Civil, desde la consumación del contrato y la fecha en que se presentó la demanda.

Además, determinó que sería el Fondo y no el obrero quien tendría la legitimación activa para cuestionar o solicitar la nulidad del contrato de transacción suscrito entre Díaz y la aseguradora.

Inconforme con la sentencia emitida por el tribunal apelativo, Díaz presentó ante nos un recurso de *certiorari* y alegó como errores los siguientes:

> Erraron los tribunales de primera instancia y de circuito de apelaciones al desestimar la demanda mediante sentencia sumaria, habida cuenta las controversias de hecho y derecho que están presentes en el caso.

> Erraron los tribunales de primera instancia y de circuito de apelaciones al determinar que el recurrente se haya impedido de reclamar la existencia de dolo en la contratación, al establecer que el mismo se encuentra prescrito.

El 13 de febrero de 2004 expedimos el auto solicitado a fin de revisar la resolución dictada el 2 de diciembre de 2003 por el foro apelativo. El 30 de marzo de 2004 la parte peticionaria presentó su alegato y el 29 de abril de 2004 la parte recurrida presentó el suyo.

II.

Como se sabe, la Ley Núm. 45 del 18 de abril del 1935, según enmendada, conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo (en adelante la Ley), establece un esquema de seguro compulsorio mediante el cual los empleados que trabajan para patronos asegurados y que sufran lesiones, se inutilicen o pierdan la vida por accidentes que provengan de cualquier acto o función inherente a su trabajo o empleo, son acreedores de los amplios remedios compensatorios provistos por dicha Ley. Los obreros tienen derecho a recibir los beneficios del estatuto, independientemente de que pueda demostrarse que la lesión sobrevino por la negligencia del patrono. A cambio de ello, los patronos gozan de inmunidad con respecto a acciones de daños y perjuicios presentadas por el obrero afectado con relación a su lesión. Este *quid pro quo* es el eje central del esquema del seguro compulsorio. Sevilla v. Municipio de Toa Alta, res. el 20 de junio de 2003, 159 D.P.R. _____, 2003 TSPR 109, 2003 JTS 112, citando a Hurtado v. Osuna, 138 D.P.R. 801, 805 (1995).

Ahora bien, en casos en que el accidente es causado por un tercero la misma legislación establece una política de la mayor importancia que permite que se reclame y se obtenga indemnización en daños y perjuicios contra el tercero responsable.

Dicha normativa está recogida en el Art. 31 de la Ley que dispone, en lo pertinente:

En los casos en que la lesión, enfermedad profesional o la muerte que dan derecho de compensación al obrero, empleado o sus beneficiarios, de acuerdo con este capítulo, le hubiere provenido bajo circunstancias que hicieren responsables a tercero de tal lesión, enfermedad o muerte, el obrero o empleado lesionado o sus beneficiarios podrán reclamar y obtener daños y perjuicios del tercero responsable de dicha lesión, enfermedad o muerte **dentro del año subsiguiente a la fecha en que fuere firme la resolución del caso por el Administrador del Fondo de Seguro del Estado**, y éste podrá subrogarse en los derechos del obrero, empleado o sus beneficiarios para entablar la misma acción en la forma siguiente:

...

Si el Administrador dejare de entablar demanda contra la tercera persona responsable, según se ha expresado en el párrafo anterior, el obrero o empleado, o sus beneficiarios quedarán en libertad completa para entablar tal demanda en su beneficio, sin que vengan obligados a resarcir al Fondo del Seguro del Estado por los gastos incurridos en el caso.

**El obrero o empleado lesionado ni sus beneficiarios podrán entablar demanda <u>ni transigir ninguna causa de acción que tuvieren contra el tercero responsable de los daños, hasta después de transcurridos noventa días a partir de la fecha en que la resolución del Administrador del Fondo de Seguro del Estado fuere firme y ejecutoria</u>**.

Ninguna transacción que pueda llevarse a cabo entre el obrero o empleado lesionado, o sus beneficiarios en caso de muerte, y el tercero responsable, **<u>dentro de los noventa (90) días subsiguientes a la fecha en que la decisión fuere firme y ejecutoria</u>**, o después de expirado dicho término si el Administrador hubiere presentado su demanda, tendrá valor y eficacia en derecho a menos que se satisfagan previamente los gastos incurridos por el Fondo de Seguro del Estado en el caso; y no se dictará sentencia en pleitos de esa naturaleza, ni se aprobará transacción alguna con relación a los derechos de las partes en dichos pleitos sin hacer reserva expresa del derecho del Fondo de Seguro del Estado al reembolso de todos los gastos incurridos; ...

El Administrador del Fondo de Seguro del Estado podrá transigir sus derechos contra tercero responsable de los daños; entendiéndose, sin embargo, que ninguna transacción extrajudicial podrá afectar los derechos del obrero o empleado, o de sus beneficiarios, sin la conformidad o aprobación expresa de ellos.

...

Vemos, pues, que la excepción que establece la ley con respecto al esquema ordinario de indemnización de nuestro ordenamiento jurídico es sólo para el patrono. Cuando se trata de un tercero responsable el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, sigue vigente, por lo que el obrero tiene derecho a reclamar para indemnizar sus daños y el Fondo a reclamar sus gastos. Sin embargo, a diferencia del término prescriptivo establecido en el referido Art. 1802, el obrero lesionado tendrá **un año desde la determinación final del caso por el Administrador del Fondo** para llevar la acción. Moreno v. Penzol, 73 D.P.R. 12, 15 (1952).

Es clara la política pública respecto a daños causados por terceros que la Ley dispone. Establece que el propio Administrador del Fondo puede entablar la acción para reclamar no sólo para recobrar los daños sufridos por el trabajador, sino para también recobrar los fondos invertidos en el tratamiento y compensación del obrero. Si el Administrador no lo hace, lo puede hacer el obrero por su cuenta.

Como puede observarse, la Ley impone unas condiciones fundamentales a las acciones del Fondo y del obrero contra

el tercero. Las dos condiciones esenciales son: (1) que no podrá incoarse demanda ni transigir causa de acción contra tercero hasta **noventa días luego de que la decisión del Administrador del Fondo fuere firme y ejecutoria**; (2) **que ninguna transacción llevada a cabo <u>dentro de los noventa días subsiguientes</u> a la fecha en que la decisión fuere firme y ejecutoria tendrá valor y eficacia a menos que se haga reserva expresa del derecho del Fondo a reembolso de todos los gastos incurridos.**

Tan fundamentales son las condiciones referidas que hemos resuelto ya que si la acción de daños contra tercero se entabla **antes del período fijado por la Ley**, la acción es cuando menos anulable. Véase, <u>Alvarado v. Calaiño</u>, 104 D.P.R. 127, 135 (1975) y <u>Negrón v. Comisión Industrial</u> 76 D.P.R. 301, 308 (1954).

En resumen, pues, en nuestra jurisdicción existe una política de gran importancia social en virtud de la cual se permite que cuando es un tercero el que ocasiona los daños, el obrero pueda obtener una indemnización de éste. Pero los medios para tramitar tal indemnización están sujetos a condiciones particulares y cualquier transacción que no cumpla con ellas es inoficiosa.

III.

Pasemos ahora a aplicar al caso de autos la normativa antes reseñada.

Tenemos ante nos la situación de un obrero gravemente atropellado por un camión de un tercero, que "transigió" su reclamación por los múltiples y severos daños que sufrió, incluyendo su estado permanente de total incapacidad física, por una cantidad ínfima, al ser erróneamente persuadido, estando aún bajo tratamiento del Fondo, por el ajustador de la aseguradora, de que tal transacción era lo único a que tenía derecho. La "transacción" así acordada evidentemente no puede tener efectos, por no ajustarse a las condiciones referidas antes que fija la Ley para que sean válidas las transacciones del obrero con un tercero. La compañía de seguros, teniendo o debiendo tener conocimiento de las referidas prohibiciones de la Ley, le hizo un inescrupuloso acercamiento al obrero, induciéndolo a error.

Aquí se violentaron ambas prohibiciones de la Ley. Se llevó a cabo una transacción antes de que el Administrador del Fondo hubiese emitido su determinación final en el caso, y por lo tanto, antes de los noventa días luego de que la decisión del Administrador fuere firme y ejecutoria. Tampoco se hizo en la "transacción" aludida la reserva expresa del derecho del Fondo a reembolso de todos los gastos incurridos en el tratamiento del obrero. Por todo lo cual, dicha transacción fue totalmente inoficiosa.

Debemos repudiar que una compañía aseguradora, teniendo conocimiento pleno de la Ley, se aventure a procurar una transacción con un obrero antes de que el Administrador del Fondo haya emitido y notificado su resolución final del

caso. Tal acción es claramente anulable como lo hacemos aquí por que no solamente toma ventaja del obrero vulnerable, y también pone en riesgo los derechos del Fondo, sino, además, porque pretende finiquitar los derechos que la Ley le otorga al obrero lesionado **antes** de que se conozca toda la magnitud de los daños sufridos por éste y **antes** de que el Administrador del Fondo haya podido evaluar y aquilatar todos los extremos del caso, conforme le compete hacer por encomienda de la Ley. La transacción ilegal en esta situación constituyó un burdo intento por burlarse de la política pública en cuanto a terceros, que este Tribunal no puede permitir. Debemos recordar que el propósito de la Ley no es la protección del tercero responsable, sino la protección del trabajador y del derecho de subrogación del Fondo. Al hacerle acercamientos ilegales al obrero, se pone en riesgo no sólo los derechos de éste, sino también el derecho de subrogación del Fondo, que no tendría una acción contra el tercero si el obrero la ha transigido, pues en términos jurídicos claros **la acción no es del Fondo sino del obrero**. Gallart v. Banco Popular, 91 D.P.R. 818, 826 (1965).


IV.

Pasemos ahora al asunto de si el obrero lesionado tenía legitimación activa para impugnar la referida "transacción".

En Alvarado v. Calaiño, *supra*, nos enfrentamos a un problema que surgió en una acción judicial contra tercero presentada por un obrero lesionado, cuando el Fondo había

dejado expirar el término para subrogarse en los derechos del obrero. El foro de instancia determinó que de la indemnización concedida al obrero demandante, se tenía que reembolsar al Fondo los gastos incurridos por éste. El obrero entonces vino ante nos a cuestionar tal reembolso, en vista de que el Fondo había dejado expirar el término de subrogación.

En su contestación al recurso del obrero, el Fondo alegó, *inter alia*, que éste había instado su acción judicial ante el foro de instancia prematuramente. Como parte de nuestro análisis de dicho planteamiento abordamos la cuestión de las acciones judiciales prematuras y señalamos de pasada que tales acciones eran anulables **por el Fondo**, mediante la presentación a tiempo de la acción de subrogación, que sólo éste puede presentar. Resolvimos que la acción de dicho caso no era anulable, aunque hubiese sido prematura, porque el Fondo no había presentado la acción de subrogación a tiempo.

Tanto el foro de instancia como el foro apelativo descansaron en lo anterior para denegar la acción de Díaz por supuestamente carecer éste de legitimación activa para invocar la nulidad de la transacción por las razones expuestas antes. Erraron al resolver de ese modo.

Nótese, para comenzar, que la situación del caso de autos es claramente distinguible de la de Alvarado v. Calaiño, *supra*. Aquel caso giraba en torno al asunto de si el Fondo tenía o no derecho a **recobrar los gastos** incurridos

con respecto al obrero lesionado. En dicho caso, el Fondo era la parte demandada. En cambio, en el caso de autos, el Fondo no sólo no está demandado, sino que ni siquiera es parte en el pleito concreto ante nos debido a que éste ya recobró sus gastos con respecto al obrero lesionado. El asunto del pleito de autos gira en torno a la validez de una transacción extrajudicial mientras que en Alvarado v. Calaiño no había ninguna transacción involucrada, y por lo tanto lo allí resuelto nada tenía que ver con el asunto de tales transacciones.

Es evidente, pues, que nuestro señalamiento *in passim* en Alvarado v. Calaiño de que las **acciones judiciales prematuras** son anulables por el Fondo mediante la acción de subrogación que sólo éste puede presentar, no tiene ninguna aplicación en el caso de autos.

Por otro lado, la cuestión de si un reclamante posee **legitimación activa** depende esencialmente de que dicho reclamante cumpla con dos requisitos: (1) que haya sufrido un daño real, claro y palpable; (2) que exista una conexión entre tal daño y la causa de acción jurídica que ha ejercitado. Véase, Zapata et al. v. Zapata et al., res. el 20 de febrero de 2002, 156 D.P.R. ___, 2002 TSPR 24, 2002 JTS 30; Col. Peritos Elec. v. A.E.E., 150 D.P.R. 327 (2000); Coss y U.P.R. v. C.E.E., 137 D.P.R. 877 (1995); Noriega v. Hernández Colón, 135 D.P.R. 406 (1994); Hernández Torres v. Hernández Colón, 131 D.P.R. 593 (1992). En el caso de autos, el obrero satisface plenamente los requisitos referidos.

Dicho obrero sufrió un daño real consistente en el claro menoscabo de los derechos que le confiere la Ley, ocasionado por la acción ilegal de la aseguradora al procurar taimadamente la transacción extrajudicial que aquí nos concierne. Díaz, pues, tenía claramente legitimación activa para impugnar tal "transacción". Es su propio derecho a indemnización el que está en juego, no el derecho del Fondo a que se le reembolsaran sus gastos, que ya fueron satisfechos. Díaz era el principal beneficiario de la protección de la Ley contra transacciones prematuras, por lo que tenía claro derecho a invocar tal protección en la acción que aquí nos concierne.

V.

En vista de lo que resolvemos al amparo de las disposiciones de la Ley en cuanto a terceros, no es necesario examinar las cuestiones planteadas por las partes sobre si medió dolo en la "transacción" referida; o si la acción por dolo al amparo del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1253, estaba o no prescrita. Es norma reiterada que cuando una ley especial regula una materia específica, ésta prevalece sobre una ley de carácter general, como lo es el Código Civil. American Int. Ins. Co. v. Seguros San Miguel, Inc., res. el 7 de abril de 2004, 162 D.P.R. ____, 2004 TSPR 54, 2004 JTS 58.

Por todo lo anterior, resolvemos que en el caso de autos, la alegada "transacción" entre Díaz y la aseguradora

de Cancel acordada antes de que el Administrador del Fondo emitiese su determinación final en el caso, fue ilegal y por tanto inoficiosa. Por ende, erraron el foro de instancia y el foro apelativo al denegar sumariamente la acción de Díaz contra Cancel y su aseguradora. Procede que se dicte una sentencia para declarar la nulidad de la transacción referida y para ordenar la continuación de los procedimientos en el foro de instancia.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Peter Díaz Medina, *et als*.;
Corporación del Fondo del
Seguro del Estado

    Demandantes-Peticionarios

      v.                      CC-2004-027      CERTIORARI

Transporte Cancel Inc., *et als*.

    Demandados-Recurridos

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 22 de febrero de 2004

En el día de hoy una mayoría de los integrantes de este Tribunal resuelve que una transacción efectuada entre un obrero lesionado en el empleo y el tercero responsable del accidente, la cual fue otorgada <u>antes</u> de la determinación final del Administrador del Fondo de Seguro del Estado, es nula e inoficiosa por contravenir lo dispuesto en el Artículo 31 de la Ley Núm. 45 de 18 de abril de 1935, mejor conocida como la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 32. En su afán por llegar a esta conclusión, el Tribunal realiza una interpretación "muy particular" de la

jurisprudencia y legislación aplicable, ignorando por completo los más elementales principios de equidad que impiden que se vaya contra los actos propios. Veamos.

I

Como es sabido, el sistema de subrogación establecido en nuestra Ley del Sistema de Compensaciones por Accidentes del Trabajo establece un orden para demandar, permitiendo que el Fondo del Seguro del Estado inste, en primer lugar, un procedimiento en contra del tercero demandado dentro del término que establece la Ley. Alvarado v. Calaiño, 104 D.P.R. 127, 131-32 (1975). En el caso de que el Fondo no proceda con su demanda, entonces --y sólo entonces-- el obrero o sus beneficiarios quedan en libertad para entablar su reclamación, sin que vengan obligados a resarcir al Fondo por los gastos incurridos en el caso. 11 L.P.R.A. sec. 32.

Con el fin de proteger este derecho preferente del Fondo, en el Artículo 31 de la Ley, ante, el legislador estableció una restricción en cuanto al momento en que el obrero lesionado, o sus beneficiarios, pueden instar su demanda. A esos efectos, el referido Artículo 31 establece que "[e]l obrero o empleado lesionado ni sus beneficiarios podrán entablar demanda ni transigir ninguna causa de acción que tuvieren contra el tercero responsable de los daños, hasta después de transcurridos noventa días a partir

de la fecha en que la resolución del Administrador del Fondo de Seguro del Estado fuere firme y ejecutoria." *Ibíd*.

Como vemos, el propósito principal del estatuto bajo análisis es proteger el derecho preferente del Administrador de Fondo del Seguro del Estado a entablar procedimientos en contra del tercero responsable.[1] Así lo reconocimos en Alvarado v. Calaiño, ante a la pág. 135, al señalar que "lo que se desprende de[l] [Artículo 31 de la Ley Núm. 45, ante,] es el deseo de proteger los derechos de subrogación del Fondo [del Seguro del Estado]." Ello para evitar que el obrero pueda "adelantársele" al Administrador del Fondo, burlando así el derecho preferencial que le ha sido reconocido.

De este modo, el Artículo 31, ante, establece que ninguna transacción que pueda llevarse a cabo entre el obrero lesionado ─o sus beneficiarios en caso de muerte─ y el tercero responsable dentro de los noventa (90) días antes mencionados, o después de expirado dicho término si el Administrador hubiere presentado su demanda, tendrá valor y eficacia en derecho a menos que se satisfagan previamente los gastos incurridos por el Fondo del Seguro del Estado. Asimismo, se dispone que no se dictará sentencia en pleitos de esta naturaleza, ni se aprobará transacción alguna con relación a los derechos de las partes en dichos pleitos sin hacer reserva expresa del

---

[1] Ello, claro está, siempre que se haya compensado o proporcionado tratamiento al obrero lesionado.

derecho del Fondo del Seguro del Estado al reembolso de todos los gastos incurridos. *Ibíd*.

Vemos, pues, que la Ley se limitó a establecer el curso de acción que habrá de observarse cuando el obrero lesionado, o sus beneficiarios, presenten su acción dentro de los noventa (90) días siguientes a la fecha en que la decisión fuere firme y ejecutoria, o después de expirado dicho término si el Administrador del Fondo hubiere presentado su demanda. Nada se dispuso en la Ley para aquellos casos en que el obrero actúa antes de que la decisión sea final y firme o cuando el Fondo ni siquiera haya dictado una decisión en el caso.

Este último asunto fue abordado por este Tribunal en Negrón v. Comisión Industrial, 76 D.P.R. 301 (1954). En este caso los beneficiarios del obrero fallecido radicaron una demanda de daños y perjuicios contra los terceros responsables --y transigieron la misma-- diez meses antes de que el Fondo dictara su decisión en el caso. En aquella ocasión expresamos que la demanda presentada era prematura e ineficaz en derecho y que, por consiguiente, la transacción realizada adolecía de nulidad.

A veintiún (21) años de emitida esta decisión, en Alvarado v. Calaiño, ante a la pág. 135, este Tribunal se negó a convertir en doctrina final esta interpretación, por entender que dicha actuación impedía que se cumpliera a cabalidad con los fines de la legislación en cuestión. De este modo, "consideramos más acorde con la ley resolver que

las demandas radicadas prematuramente son anulables, en vez de nulas." (énfasis suplido). Asimismo, señalamos que "[u]nicamente el Fondo puede, por supuesto, requerir su anulación mediante la radicación en tiempo de su acción de subrogación y la correspondiente súplica de declaración de nulidad." (énfasis suplido).

Amparados en tales pronunciamientos fue que ambos foros inferiores entendieron que en el presente caso Díaz Medina no estaba en posición, ni tenía legitimación activa, para solicitarle al tribunal que anulara la transacción efectuada alegando que la misma contravenía lo dispuesto en el Artículo 31 de la Ley Núm. 45, ante. Según expresaron --correctamente-- ambos foros inferiores, quien único tiene legitimación activa para realizar tal solicitud es la Corporación del Fondo del Seguro del Estado. A esos efectos, el foro de instancia entendió que permitir tal curso de acción conllevaría aceptar que los demandantes "puedan ir en contra de, o impugnar, sus propios actos caprichosamente." Asimismo, el referido foro señaló que la declaración de nulidad a la que se refirió el Tribunal en Alvarado v. Calaiño, ante, "no es en protección de los derechos que tiene el obrero de presentar una causa de acción independiente en contra del ente que le haya causado daños", sino para proteger el derecho de subrogación del Fondo del Seguro del Estado.

Ignorando por completo los correctos argumentos de ambos foros inferiores, en el día de hoy la Mayoría de este

Tribunal recurre al "mollero judicial" en un vano esfuerzo por distinguir los hechos de este caso de la situación atendida en Alvarado v. Calaiño, ante. De este modo, la Mayoría pretende hacernos creer que lo resuelto en cuanto a la validez de las demandas radicadas prematuramente no puede, de forma alguna, ser aplicado a una situación de hechos en que lo que está bajo análisis es una transacción realizada prematuramente. Definitivamente, no vemos razón alguna para establecer --responsablemente-- tal diferencia. Es por ello que entendemos que en el presente caso debe aplicarse la normativa establecida en Alvarado v. Calaiño, ante, a los efectos de que es el Administrador del Fondo quien único puede requerir la anulación de los procedimientos iniciados prematuramente, mediante la radicación en tiempo de su acción de subrogación y, sobre todo, la correspondiente súplica de declaración de nulidad.

En el presente caso el Fondo del Seguro del Estado, a pesar de que radicó en tiempo su acción de subrogación, nunca solicitó que se declarara nula la transacción realizada entre Díaz Medina y el tercero responsable. Todo lo contrario, el Fondo ratificó tal negociación al transigir su propia reclamación --por concepto de los gastos incurridos por la Corporación-- a cambio de recibir la suma de $42,000.00. Ello descarta por completo la posibilidad de que pueda declararse nula la "transacción prematura" realizada por Díaz Medina. Es evidente que ni la

jurisprudencia aplicable ni la legislación vigente apoyan la conclusión esbozada por la Mayoría en el caso ante nos.

Un análisis sosegado y, sobre todo, responsable de la situación planteada en el presente caso, nos obliga a examinar el mismo a la luz de la doctrina de los actos propios. Ello considerando que, tal y como concluyeron ambos foros inferiores, la alegación de vicio en el consentimiento por dolo o engaño no sólo está prescrita,[2] sino que la parte demandante no rebatió la presunción de "validez del consentimiento y del contrato". Véase: Unisys v. Ramallo Brothers, 128 D.P.R. 842 (1991). Coincidimos con el razonamiento del tribunal apelativo intermedio en este aspecto. Al auscultar la posibilidad de que se trate de una alegación de dolo como defensa, en cuyo caso no existiría término prescriptivo, el foro apelativo intermedio concluyó

_____

[2] El Artículo 1253 del Código Civil dispone:

> La acción de nulidad sólo durará cuatro (4) años.
>
> Este tiempo empezará a correr:
> En los casos de intimidación o violencia, desde el día en que éstas hubiesen cesado; en los de error, o dolo, o falsedad de la causa, desde la consumación del contrato; cuando la acción se dirija a invalidar contratos hechos por mujer casada, sin licencia o autorización competente, desde el día de la disolución del matrimonio y cuando se refiera a los contratos celebrados por los menores o incapacitados, desde que salieren de tutela.

En el presente caso el contrato de transacción fue suscrito el 9 de junio de 1994 y la alegación de que en la transacción efectuada medió dolo que vició el consentimiento fue presentada, por primera vez, el 24 de octubre de 2002; esto es, a poco más de ocho años de la consumación del contrato.

que en el presente caso no existe controversia en torno al hecho de que Díaz Medina era una persona que tenía estudios de cuarto año y que en ningún momento alegó que no supiera leer o escribir o que no entendiera el significado de las palabras contenidas en el documento que firmó. Asimismo, el referido foro entendió que en el presente caso no existe controversia en cuanto a que Díaz Medina declaró bajo juramento que no tenía ningún problema de carácter mental al momento de suscribir la transacción. Además, enfatizó el hecho de que en el documento de "relevo y descargo" no existían elementos oscuros o engañosos y que el mismo fue suscrito ante un notario público que certificó que Díaz Medina leyó el documento antes de suscribirlo y que, a su entender, éste se encontraba capacitado mental y civilmente al momento de efectuar la transacción.

Tenemos, pues, que acudir a la máxima de que "el actor o participante del acto ilícito no puede recurrir al juez en demanda de su nulidad." Rubio Sacarello v. Roig, 84 D.P.R. 344, 350 (1962). Tal y como expresamos en International General Electric v. Concrete Builders of P.R., 104 D.P.R. 871, 877-78 (1976), "[e]l contenido de la norma de que a nadie es lícito ir contra los propios actos tiene fundamento y raíz en el principio general de Derecho que ordena proceder de buena fe en la vida jurídica." Ibíd. No cabe duda que "[l]a conducta contradictoria no tiene lugar en el campo del Derecho, y debe ser impedida." Ello evita que "el sujeto al que es imputable el acto unilateral

pueda actuar en contradicción con su voluntad declarada."
*Ibíd*.

Por entender que la conclusión de la Mayoría se aparta por completo de lo antes expuesto, y preocupados por el curso decisorio erróneo que sigue la Mayoría en el presente caso, es que disentimos por escrito.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado