Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| LUIS JOSÉ RODRÍGUEZ PÉREZ Y OTROS<br><br>Demandante-Apelados<br><br>v.<br><br>DEPORTES SALVADOR COLOM, INC. Y OTROS<br><br>Demandada-Apelantes<br><br>------------------------------<br>LUIS JOSÉ RODRÍGUEZ PÉREZ Y OTROS<br><br>v.<br><br>Demandantes-Recurridos<br><br>DEPORTES SALVADOR COLOM, Y OTROS<br><br>Demandados<br><br><br>UNIVERSAL INSURANCE COMPANY<br><br>Demandada-Peticionaria | KLAN202300714<br><br>CONS.<br><br>KLCE202300892 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2021CV00391<br><br>Sala: 805<br><br>SOBRE: DAÑOS Y PERJUICIOS<br>-------------------------<br>*CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br><br>Civil Núm. SJ2021CV00391<br><br><br>SALA: 805<br><br><br>SOBRE: DAÑOS Y PERJUICIOS |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de noviembre de 2023.

En cuanto al recurso **KLAN202300714**, comparece la parte apelante, Deportes Salvador Colom, Inc., (en adelante, "apelante" o "Deportes SC"), para solicitarnos que se revise la *Sentencia Parcial* emitida el 13 de junio de 2023, notificada el 14 de junio de 2023, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, ("Tribunal de Primera Instancia"), mediante la cual desestimó sin perjuicio la Demanda en cuanto al demandante Luis

José Rodríguez Pérez (en adelante, "señor Rodríguez Pérez" o "Apelado"), por ser prematura.

En cuanto al recurso **KLCE202300892**, comparece la parte peticionaria, Universal Insurance Company, (en adelante, "peticionario" o "Universal"), para solicitarnos que se revise la *Resolución* emitida el 30 de mayo de 2023, notificada el 1 de junio de 2023, por el Tribunal de Primera Instancia mediante la cual se declaró *"No Ha Lugar"* la *Solicitud de Sentencia Sumaria Parcial.*

Examinadas las solicitudes de autos, la totalidad de los expedientes y el estado de derecho aplicable ante nuestra consideración, resolvemos lo siguiente: 1) en cuanto al caso **KLAN202300714**, se confirma en cuanto a la desestimación sin perjuicio de la causa de acción del Sr. Rodríguez Pérez y modificamos la *Sentencia* apelada para ordenar la paralización de los procedimientos hasta la culminación de los procesos en la Corporación del Fondo del Seguro del Estado por economía procesal, evitando la bifurcación del pleito y posible perjuicio a las partes. Por otro lado, 2) en cuanto al caso **KLCE202300892**, expedimos el recurso de *Certiorari* y confirmamos la *Resolución* recurrida por los fundamentos que expondremos a continuación.

I

El 21 de enero de 2021, el Sr. Rodríguez Pérez, la Sra. Mayra Díaz Rivera, la Sociedad Legal de Gananciales compuesta por ambos y el menor de edad D.R.D. (en adelante y en conjunto, "Familia Rodríguez-Díaz") presentaron una *Demanda* de daños y perjuicios en contra de Deportes SC, como patrono del Sr. Rodríguez Pérez. Los demandantes reclamaron una indemnización por los daños y perjuicios sufridos por el accidente del Apelado mientras este ejercía funciones laborales en el almacén de Deportes SC. Específicamente, se alegó que Deportes SC tuvo una plataforma mecánica instalada en su almacén y que alegadamente, fue manufacturada

caseramente y no era apta para el transporte de personas. Según las alegaciones de la *Demanda*, el señor Rodríguez Pérez sufrió una caída debido a las deficiencias de la plataforma. Como consecuencia, sufrió graves heridas y quedó parapléjico, entre otras cosas.

Por su parte, el 27 de septiembre de 2021, Deportes SC presentó *Contestación a Demanda*. En esta, alegó que estaba asegurado bajo la Ley Núm. 45 de 1935, según enmendada, también conocida como *Ley del Sistema de Compensaciones por Accidentes del Trabajo.*[1] Siendo así, el 3 de diciembre de 2021, la Familia Rodríguez-Díaz presentó *Primera Demanda Enmendada*, mediante la cual incluyó como codemandados a Inversiones Comerciales, Inc. (en adelante "Inversiones CI"), arrendadora del inmueble donde presuntamente ocurrieron los hechos, y a Universal Insurance Company (en adelante "Universal"), compañía aseguradora de Deportes SC e Inversiones CI. En su *Primera Demanda Enmendada*, la Familia Rodríguez Díaz reiteró sus alegaciones contra Deportes SC junto al remedio solicitado y añadió que Inversiones CI conocía de la existencia y características de las condiciones que presuntamente le ocasionaron los daños al Sr. Rodríguez Pérez. Además, sostuvo que el incidente constituyó una ocurrencia conforme a las pólizas expedidas por Universal, por lo que según expresaron, Deportes SC, Inversiones CI y Universal responden solidariamente por los daños sufridos.

El 26 de enero de 2022, Inversiones CI presentó *Contestación a Primera Demanda Enmendada.* En síntesis, aceptó ser el arrendador del inmueble, pero negó la existencia de una relación causal que lo vincule con los daños reclamados por la Sociedad Legal de Gananciales y el menor D.R.D. Siendo así, el 11 de febrero de 2022, Universal presentó *Moción Incorporando por Referencia*

---

[1] Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, según enmendada,11 LPRA sec. 1.

*Contestación a Demanda Enmendada de Deportes Salvador Colom, Inc. como Alegación Responsiva,* en donde alegó que su responsabilidad está sujeta a los términos, condiciones y exclusiones de la Póliza Núm. 560-000714617.

Tras varios trámites procesales, el 21 de julio de 2022, Deportes SC radicó *Moción Solicitando Paralización de los Procedimientos y/o Desestimación Sin Perjuicio.* En síntesis, arguyó que, según las alegaciones de la *Demanda* y admisión de parte, el obrero lesionado se encontraba recibiendo tratamiento en la Corporación del Fondo del Seguro del Estado (en adelante, "CFSE"), por lo que se encuentra impedido de continuar los procedimientos hasta que la CFSE emita una resolución que sea final y firme. Evaluada la solicitud, el Tribunal de Primera Instancia le otorgó un término de dos (2) meses a la Familia Rodríguez-Díaz para que presentaran resolución de la CFSE, so pena de desestimación.

Así las cosas, trascurridos los dos meses sin que los apelados presentaran Resolución final de la CFSE, Deportes SC solicitó nuevamente la paralización o desestimación del pleito. El Tribunal de Primera Instancia no realizó determinación alguna en cuanto a esto.

Posteriormente, el 29 de noviembre de 2022, Universal presentó *Solicitud de Sentencia Sumaria Parcial,* en la cual alegó la inexistencia de controversias de hechos en cuanto a la póliza, ya que esta no ofrece cubierta para los daños reclamados en la *Primera Demanda Enmendada.* Por su parte, el 30 de enero de 2023, la Familia Rodríguez-Díaz radicó *Oposición a Moción para Solicitar Sentencia Sumaria.* Arguyó que se incumplió con los requisitos de la Regla 36 de Procedimiento Civil.[2] Además, sostuvo que la póliza emitida por Universal tiene varios endosos relevantes que añadieron

---

[2] 32 LPRA Ap. V, R. 36.

a Inversiones CI como asegurado y que proveen cubierta para daños a raíz de accidentes intencionales. De forma adicional, aseguró que las cláusulas de la póliza son contradictorias y sujetas a interpretación. En respuesta a lo anterior, Universal presentó *Réplica a Oposición a Solicitud de Sentencia Sumaria* en donde expuso que los endosos expresamente excluyen cubierta por conducta intencional y por los daños bajo la Ley del Sistema de Compensaciones por Accidentes en el Trabajo.[3]

Por otro lado, no habiéndose expresado el Tribunal de Primera Instancia en cuanto a la nueva solicitud de paralización presentada por Deportes SC, el 13 de junio de 2023, la compañía presentó una tercera solicitud de orden, en la cual reclamó la desestimación del pleito. En respuesta, el Foro de Instancia emitió *Sentencia Parcial* desestimando sin perjuicio la Demanda del obrero lesionado. Sin embargo, no realizó determinación alguna en cuanto a la causa de acción que ostenta la familia.

Insatisfechos con la determinación, el 23 de junio de 2023, Deportes SC presentó *Moción en Reconsideración*, en la cual solicitó que se desestimara la causa de acción en cuanto a la Sra. Mayra Díaz Rivera, la Sociedad Legal de Gananciales y el menor D.R.D. Argumentó que en base a la inmunidad patronal que les otorga la Ley Núm. 45-1935, según enmendada[4], la familia no tiene una causa de acción en su contra. El 2 de agosto de 2023, el Tribunal de Primera Instancia declaró *"No Ha Lugar"* la *Reconsideración* presentada por Deportes SC.

Ahora bien, en cuanto a la *Solicitud de Sentencia Sumaria Parcial* presentada por Universal, el Tribunal de Primera Instancia emitió *Resolución* el 1 de junio de 2023, en la cual declaró *"No Ha*

---

[3] Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, 11 LPRA sec. 1 et seq.
[4] *Id.*

*Lugar"* la solicitud. Fundamentó su decisión en que las cláusulas de la póliza son oscuras y ambiguas y que, aunque el Commercial General Liability (en adelante, "CGL") no provee cubierta de "bodily injury" por los hechos presentados en la *Demanda*, el Foro de Instancia entiende que Inversiones CI pudiese tener cubierta por el hecho de que el señor Rodríguez no es su empleado.

Insatisfechos, Deportes SC presentó *Reconsideración* el 16 de junio de 2023, en la cual solicitó que se considerara a Deportes SC como asegurado y se acoja el hecho de que Puerto Rico Occupational Safety Heath Administration (en adelante, "PR OSHA") no señaló conducta intencional en sus citaciones. Por su parte el Foro de Instancia emitió *Orden* en la cual declaró *"No Ha Lugar"* la *Reconsideración* presentada por Deportes SC.

Inconformes, el 11 de agosto de 2023, Universal presentó recurso de *Certiorari* **KLCE202300892** en el cual levanta los siguientes señalamientos de error:

### PRIMER ERROR

ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL DECLARAR NO HA LUGAR LA MOCIÓN DE SETENCIA SUMARIA PARCIAL DE UNIVERSAL AL CONCLUIR QUE EL ENDOSO **STOP GAP- EMPLOYERS LIABILITY** PROVEE CUBIERTA, YA QUE LAS CUBIERTAS DE BODILY INJURY BY ACCIDENT SON DOS CUBIERTAS DIFERENTES CON SUS PROPIAS EXCLUSIONES, Y NO EXCLUIR DICHO ENDOSO EXPRESAMENTE LOS ACCIDENTES DE EMPLEADOS, NI SUS FAMILIARES. (Énfasis suplido).

### SEGUNDO ERROR

ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL DETERMINAR QUE NO ESTÁ CLARA LA INTENCIÓN DEL ENDOSO DE ASEGURADO ADICIONAL EN EL CUAL SE INCLUYÓ A ICI, POR TENER DUDA EL TPI SOBRE SI LA INTENCIÓN DEL ENDOSO FUE QUE ICI SE SUBROGARA EN LOS DERECHO[S] DE DSC PARA EFECTOS DE LAS EXCLUSIONES, POR NO ESTAR CLARO SI LE APLICA LA EXCLUSIÓN DE EMPLOYEERS LIABILITY A ICI AL IGUAL QUE LE APLICA A DCS, A PESAR DE ICI NO SER PATRONO DEL DEMANDANTE.

### TERCER ERROR

ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL CONCLUIR QUE LAS DISPOSICIONES CONJUNTAS DEL CGL Y EL ENDOSO DE ASEGURADO ADICIONAL DE ICI SON "CLÁUSULAS OSCURAS Y AMBIGUAS" E INTERPRETARLAS A FAVOR DEL ASEGURADO.

### CUARTO ERROR

ERRÓ EL TPI AL RESOLVER QUE EL CGL NO LE PROVEE CUBIERTA A DSC, PERO "ICI SI PUDIERA TENER CUBIERTA" POR EL HECHO QUE EL DEMANDANTE NO ES SU EMPLEADO.

Por otra parte, en cuanto al caso **KLAN202300714,** Deportes SC presentó recurso de Apelación ante este foro revisor el 14 de agosto de 2023, señalando el siguiente error:

EL TPI ERRÓ AL NO DESESTIMAR LA TOTALIDAD DE LAS CAUSAS DE ACCIÓN EN LA DEMANDA Y PERMITIR LA CONTINUACIÓN FRAGMENTADA DE UN PROCESO JUDICIAL SOBRE LOS DAÑOS Y PERJUICIOS DE LOS BENEFICIARIOS DE UN OBRERO LESIONADO, QUIEN TODAVÍA NO HA SIDO DADO DE ALTA POR PARTE DE LA CORPORACIÓN DEL FONDO DE SEGUROS DEL ESTADO, NI SE HA EMITIDO UNA RESOLUCIÓN FINAL SOBRE SI LA CFSE SE SUBROGARÍA EN LOS DERECHOS DEL TRABAJADOR SEGÚN DISPONE LA LEY 45.

Habiendo comparecido las partes y presentado sus respectivos escritos, damos por perfeccionado los presentes recursos y procedemos a exponer el derecho aplicable.

II

**A. Certiorari**

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido.[5] La Regla 52.1 de Procedimiento Civil,[6] establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones, sobre

---

[5] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 212 DPR ___ (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012).
[6] 32 LPRA Ap. V, R. 52.1.

el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia.[7] En lo pertinente, la Regla 52.1, *supra,* dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

32 LPRA Ap. V, R. 52.1

Por otra parte, la Regla 52.2(b)[8] establece los términos y efectos de la presentación de un recurso de *certiorari*:

> (b) *Recurso de "certiorari".* Los recursos de *certiorari* al Tribunal de Apelaciones para revisar las resoluciones finales en procedimientos de jurisdicción voluntaria [...] deberán ser presentados dentro del término jurisdiccional de treinta (30) días contados desde el archivo en autos de copia de la notificación de la sentencia o resolución recurrida.
>
> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia [...] deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari.*
>
> En aquellos casos que mediante recurso de *certiorari* se paralicen los procesos ante el Tribunal de

---

[7] *Id.*; *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 709 (2019).
[8] 32 LPRA Ap. V, 52.2(b).

Primera Instancia, el Tribunal de Apelaciones deberá resolver la controversia presentada ante sí dentro de los sesenta (60) días siguientes a que las partes concernidas se hayan expresado.

32 LPRA Ap. V, 52.2(b)

La discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera.[9] Así pues, la discreción judicial para expedir o no el auto de *certiorari*, no ocurre en un vacío ni en ausencia de parámetros.[10] Cónsono con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones[11], orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari*.[12] La referida regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

---

[9] *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR 821 (2023); *Mun. Caguas v. JRO Construction*, *supra*, 712; *IG Builders et al. v. BBVAPR*, *supra*, 338.
[10] *Id.*
[11] 4 LPRA Ap. XXII-B, R. 40.
[12] *Torres González v. Zaragosa Meléndez*, *supra*; *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, *supra*; *Mun. Caguas v. JRO Construction*, *supra*; *McNeil Healthcare v. Mun. Las Piedras I*, *supra*, págs. 404-405; *IG Builders et al. v. BBVAPR*, *supra*, págs. 338-339.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cabe precisar que, el recurso de *certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso.[13] Es por ello que, los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado.[14] Nuestro ordenamiento jurídico ha establecido que, el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[15]

**B. Ley Núm. 45-1935**

El segundo párrafo del Art. 29 de la Ley de Compensaciones por Accidentes en el Trabajo establece lo siguiente:

> Cuando un obrero o empleado lesionado, o **sus beneficiarios en casos de muerte**, tuvieren derecho a entablar acción por daños contra tercero, en los casos en que el Fondo del Seguro del Estado, de acuerdo con los términos de esta Ley, estuviere obligado a compensar en alguna forma, o a proporcionar tratamiento, el Administrador del Fondo del Seguro del Estado se subrogará en los derechos del obrero o empleado, o de sus beneficiarios, y podrá entablar procedimientos en contra del tercero en nombre del obrero o empleado, o de sus beneficiarios, dentro de los noventa (90) días siguientes a la fecha en que la decisión fuere firme y ejecutoria, y cualquier suma que como resultado de la acción, o a virtud de transacción judicial o extrajudicial se obtuviere en exceso de los gastos incurridos en el caso se entregará al obrero o empleado lesionado o a sus beneficiarios con derecho a la misma.[16] (Énfasis nuestro).

Por su parte, el Tribunal Supremo ha interpretado quiénes son beneficiarios en cuanto a dicha ley. En el caso *Día, Inc. et al. v.*

---

[13] *Pueblo v. Díaz De León*, 176 DPR 913, 918 (2009).
[14] *Id.*
[15] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, *supra*; *Cruz Flores et al.*, 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular*, 152 DPR 140, 155 (2000).
[16] Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, 11 LPRA sec. 32.

*Tribunal Superior*[17] se especificó que la determinación de quién es beneficiario es una que se toma al momento en el que el Administrador emite su decisión final. Sin embargo, "cuando se trata de un accidente del trabajo en que la persona solamente surge lesiones, sin mediar muerte dentro del período de tiempo que establece la ley, realmente no existe ni entra en juego problema de identificación de beneficiario, este será el propio lesionado."[18] Ahora bien, el término prescriptivo de un año para iniciar acción de daños contra el causante responsable no queda suspendido en cuanto a los familiares de un lesionado acogido al tratamiento ante el Fondo del Seguro del Estado por estos no resultar beneficiarios al amparo de la legislación especial.[19]

Siendo así, es importante enfatizar que las causas de acción del lesionado y su familia son causas totalmente aparte, por lo que si la familia no presenta su causa de acción dentro del término de prescripción ésta quedará prescrita. De hecho, la jurisprudencia establece que "[e]n lo que toca a la acción de la sociedad de gananciales y de los hijos, hemos resuelto que nuestro estatuto de Compensaciones a Obreros no les impide demandar al tercero antes de expirar el plazo reservándole al Fondo para subrogarse en los derechos del lesionado."[20] De hecho, el Tribunal Supremo ha expresado que las compensaciones otorgadas a la Sociedad Legal de Gananciales por concepto de daños y perjuicios son privativas,[21] lo que refuerza aún más la separación de las causas de acciones de la familia con la del lesionado.

**C. Sentencia Sumaria**

La Sentencia Sumaria es un mecanismo procesal que tiene como propósito la solución, justa, rápida y económica de los litigios

---

[17] *Día, Inc. et al v. Tribunal Superior*, 104 DPR 149, 151 (1975).
[18] *Id.*
[19] *Id.*
[20] *Alvarado v. Calaino Romero*, 104 DPR 127, 135 (1975).
[21] *Robles Ostolaza v. UPR*, 96 DPR 583, 597 (1968).

civiles que no contengan controversias de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio en su fondo.[22]La Regla 36.1 de Procedimiento Civil[23] establece que las partes podrán presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada. La Sentencia Sumaria es una excepción al juicio mediante testimonios vivos frente al juzgador de los hechos.[24] La parte que solicita la Sentencia Sumaria tiene la responsabilidad de demostrar de manera clara que el promovido no puede prevalecer mediante ningún supuesto de hechos y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración.[25]

Por su parte, el Tribunal tiene discreción para conceder o no la Sentencia Sumaria, ya que el mal uso de esta puede despojar a un litigante de su día en corte, lo que coartaría su debido proceso de ley.[26] Es por lo anterior, que no es aconsejable que se utilice el mecanismo de Sentencia Sumaria cuando hay elementos subjetivos que deban ser evaluados por el juzgador. No obstante, el Tribunal puede utilizar el mecanismo de sentencia sumaria, aun cuando hay elementos subjetivos, si la evidencia que será considerada en la solicitud surge que no existe controversia en cuanto a los hechos materiales.[27] Ahora bien, antes de utilizar el mecanismo de Sentencia Sumaria, el Tribunal debe examinar lo siguiente:

> (1) analizará los documentos que acompañan la moción solicitando la Sentencia Sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal, (2) determinará si el oponente controvirtió algún hecho materia o si hay

---

[22] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).
[23] 32 LPRA Ap. V, R. 36.1.
[24] *SLG Zapata-Rivera v. J.F. Montalvo, supra.*
[25] *Id.*
[26] *Roing Com. Bank v. Rosario Cirino*, 126 DPR 613, 617, (1990).
[27] *SLG Zapata-Rivera v. J.F. Montalvo, supra.*

alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. [28]

Anteriormente discutimos que el fin de la Sentencia Sumaria es aligerar la tramitación del caso, permitiendo al Tribunal disponer de un caso sin la celebración de una vista en sus méritos. Sin embargo, al dictar Sentencia Sumaria no se puede poner en peligro o lesionar los intereses de las partes. Es por eso que, si existen dudas sobre la existencia de controversias de hechos estas deben resolverse en contra de la parte que solicita la Sentencia Sumaria. El Tribunal de Primera Instancia no podrá dictar Sentencia Sumaria cuando "(1) existan hechos materiales y esenciales controvertidos, (2) hay alegaciones afirmativas en la demanda que no ha sido refutadas, (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre hecho material y esencial o (4) como cuestión de derecho no procede."[29]

Ahora bien, si la otra parte desea derrotar una moción de Sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente.[30] No obstante, el solo hecho de no presentar evidencia que controvierta la presentada por el promovente, no implica necesariamente que procede la Sentencia Sumaria. Los jueces tienen el deber de evaluar toda la evidencia, incluso aquella que no haya formado parte de la solicitud.[31]

En cuanto al estándar aplicable al Tribunal de Apelaciones al momento de revisar las determinaciones del foro primario de conceder o denegar mociones de Sentencia Sumaria, se ha establecido que debemos realizar una evaluación *de novo* de la controversia.[32] En ese análisis, estamos facultados a considerar los

---

[28] *Management Administration Services*, Corp v. ELA, 152 DPR 599, 611 (2000).
[29] *Id.*
[30] *PFZ Props, Inc v Gen, Acc Ins. Co.* 136 DPR 881, 912 (1994).
[31] *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).
[32] *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015).

documentos que se presentaron ante el foro primario, determinar si existe o no alguna controversia genuina de hechos materiales, y revisar si se aplicó el derecho de forma correcta.[33]

## D. El contrato de seguro

El negocio de seguros está revestido de un alto interés público debido al rol que ocupa en la protección de los riesgos que amenazan la vida o el patrimonio de la ciudadanía.[34] Por tal razón, ha sido regulado mediante el Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957.[35] Dicho estatuto establece la hermenéutica aplicable para la interpretación de las Pólizas de Seguros. Siendo así, "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta."[36] Ahora bien, debemos destacar que las normas generales del Código Civil de Puerto Rico sobre la interpretación de los contratos aplican sólo supletoriamente.[37]

Al igual que todos los contratos, los contratos de seguros son la ley entre las partes.[38] Sin embargo, son considerados contratos de adhesión, por lo que deben interpretarse liberalmente en beneficio del asegurado.[39] No obstante, si los términos del contrato de seguros son claros, específicos libre de ambigüedades, y que no dan margen

---

[33] *Id.*

[34] *Serrano Picón v. Multinational Life Insurance Company*, 2023 TSPR 118, 212 DPR ___; *W.M.M. y otros v. Puerto Rico Christian School, Inc., y otros*, 2023 TSPR 48, 211 DPR 871 (2023); *San Luis Center Apts. Et al. v. Triple-S*, 208 DPR 824, 831 (2022).

[35] Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1975, 26 LPRA sec. 101.

[36] Art. 11.250, 26 LPRA sec. 1125.

[37] *Consejo de Titulares v. MAPFRE*, 208 DPR 761, 773 (2022); *Banco de la Vivienda v. Pagán Ins. Underwriters*, 111 DPR 1, 6 (1981).

[38] *Con. Tit. Acquamarina et al. v. Triple-S*, 210 DPR 344, 359 (2022); *López v. Atlantic Southern Ins. Co.* 158 DPR 562, 568 (2003).

[39] *Con. Tit. Acquamarina et al. v. Triple-S, supra*, pág. 358; *Molina v. Plaza Acuática*, 166 DPR 260, 267 (2005).

a diferentes interpretaciones, se hará clara la voluntad de las partes.[40]

Los términos de las pólizas de seguro deben ser generalmente entendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces.[41] De esta manera, el asegurado que adquiere una póliza tiene derecho a confiar en la cubierta que se le ofrece, leyendo las cláusulas del contrato a la luz del sentido popular de sus palabras.[42]

Ahora bien, los seguros tienen como propósito la indemnización y protección en caso de producirse el suceso incierto previsto.[43] Al evaluar cuales son los riesgos cubiertos por la póliza de seguros es necesario estudiar si existe alguna cláusula de exclusión. La jurisprudencia ha establecido que "[e]stas cláusulas tienen el propósito de limitar la cubierta establecida en el acuerdo principal y disponen que el asegurador no responderá por determinados eventos, riesgos o peligros."[44] A raíz de lo anterior, el Tribunal Supremo ha resuelto que las exclusiones se deben interpretar restrictivamente en contra del asegurador, para así cumplir con el propósito de todo seguro de ofrecer la mayor protección a la persona asegurada.[45] No obstante, "[s]i una cláusula de exclusión aplica claramente a determinada situación, la póliza, en general, no cubre los daños en cuestión, a pesar de las inferencias que parezca surgir de las demás clausulas".[46]

---

[40] *Con. Tit. Acquamarina et al. v. Triple-S, supra,* pág. 359; *Molina v. Plaza Acuática, supra,* pág. 268.
[41] *OCS v. Point Guard Ins.,* 205 DPR 1005, 1032 (2020); *Morales Garay v. Roldan Coss,* 110 DPR 701,706 (1981).
[42] *SLG Ortiz-Alvarado v. Great American,* 182 DPR 48, 73 (2011); *Barreras v. Santana,* 87 DPR 227, 235 (1963).
[43] Art. 1.020, 26 LPRA sec. 102.
[44] *Echandi Otero v. Stewart Title,* 174 DPR 355, 370 (2008).
[45] *Serrano Picón v. Multinational Life Insurance Co., supra; Id.*
[46] *Marin v American Int'l Ins. Co. of Puerto Rico,* 137 DPR 356, 362(1994).

### III

El presente caso fue consolidado por ambos recursos nacer de la misma causa de acción presentada ante el Tribunal de Primera Instancia. Sin embargo, los discutiremos separadamente, para facilitar la compresión de nuestra determinación.

### A

**KLAN202300714:**

En el caso ante nos, el Apelante presentó recurso de Apelación en el cual alegó que erró el Tribunal de Primera Instancia al no desestimar la causa de acción presentada por la Familia Rodríguez-Díaz permitiendo así la fragmentación de los procesos cuando aún no se tiene una determinación por parte de la CFSE.

Como discutimos anteriormente, la Ley Núm. 45-1935[47] establece que un obrero o **sus beneficiarios en casos de muerte** tienen derecho a entablar una causa de acción por daños en contra de un tercero siempre que la CFSE estuviere obligado a compensar de alguna forma al lesionado o sus beneficiarios. Ahora bien, el Tribunal Supremo interpretó que cuando se trata de un accidente del trabajo en el que la persona solamente sufre lesiones, sin mediar la muerte, no hay más beneficiarios que el propio lesionado. Por tanto, la causa de acción de la familia es una separada a la del lesionado, que nace del Art. 1802 del Código Civil.[48] Siendo así, de la familia no presentar su causa de acción dentro del término establecido de un año prescribe, ya que la Ley Núm. 45-1935 no paraliza los términos correspondientes en cuanto a los familiares que no son beneficiarios.

En el caso ante nos, el Sr. José Rodríguez Pérez fue presuntamente lesionado mientras realizaba funciones

---

[47] Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, 11 LPRA sec. 1
[48] 31 LPRA sec. 5141. Aclaramos que es de aplicación el Código Civil del 1930 ya derogado por la fecha en que surgieron los hechos.

correspondientes a su trabajo y aún recibe tratamiento médico a través de la CFSE. El 21 de enero de 2021 el Sr. Rodríguez Pérez, su esposa, la Sociedad Legal de Gananciales y su hijo menor presentaron *Demanda* por daños y perjuicios. No obstante, el Foro de Instancia desestimó sin perjuicio la acción del lesionado por aún no tener una determinación firme y ejecutoria de la CFSE. Es por lo anterior, que Deportes SC recurre ante nos solicitando la desestimación total de la *Demanda*, alegando que la familia es beneficiaria según la Ley Núm. 45-1935, no le asiste la razón.

Como discutimos anteriormente, el Tribunal Supremo ha determinado que, cuando se aplica la Ley Núm. 45-1935, es importante identificar quiénes son los beneficiarios. Siendo así, cuando el empleado fallece, los familiares pasan a ser los beneficiarios ante dicha ley. Sin embargo, cuando el empleado está lesionado, él es el único beneficiario. En consonancia con lo anterior, **la reclamación de la señora Díaz Rivera, la Sociedad Legal de Gananciales y el menor D.R.D. es una aparte, cobijada por el Código Civil de Puerto Rico, el cual le concede un término de un año para iniciar la reclamación de daños y perjuicios. Por lo que si la causa de acción no es presentada dentro de este término la misma prescribe.**

Por otra parte, si bien es cierto que las causas de acción son separadas, existen elementos que las unifican, por lo que continuar con los procedimientos sin haber recibido una determinación por parte de la CFSE ocasionaría un perjuicio a las demás partes. Por tanto, ordenamos **la paralización de los procesos hasta que la CFSE emita una determinación.** Esta decisión responde al principio de economía procesal que permea en nuestro ordenamiento jurídico.

**B**

**KLCE202300892:**

Por otro lado, pasamos a discutir el recurso de *certiorari* presentado ante nos. En dicho recurso, Universal trae ante nuestra consideración cuatro señalamientos de error que giran en torno a la interpretación de las cláusulas de la póliza de seguro. Primeramente, señala que erró el Tribunal de Primera Instancia al concluir que no procede expedir *Sentencia Sumaria Parcial* debido a que el endoso *STOP GAP- EMPLOYER LIABILITY* provee cubierta, puesto a que las cubiertas de "*bodily injury*" y "*bodily injury by accident*" son diferentes cada una con sus propias exclusiones.

Como discutimos anteriormente, la Sentencia Sumaria tiene como propósito la solución justa, rápida y económica en los procesos civiles que no contengan controversias de hechos materiales. Sin embargo, el mal uso de este mecanismo puede despojar a un litigante de su día en corte lo cual coartaría su debido proceso ley. En consecuencia, no erró el foro *a quo* al no resolver el pleito sumariamente, pues persisten controversias de hechos que prohíben la resolución del pleito por esta vía y son necesarias para poder determinar la aplicabilidad de las pólizas de seguro. Los siguientes hechos son aquellos que permanecen en controversia:

a. **Hechos materiales que están en controversia:**

50. Si el Sr. Rodríguez es empleado regular de DSC desde el 2013.

51. Si luego de entrar a la plataforma, el Sr. Rodríguez oprimió el botón casero que hacía que la plataforma se moviera de una planta a otra. Si luego de oprimir el botón una primera vez, la plataforma no se movió. Si el Sr. Rodríguez entonces oprimió el botón por segunda vez. Si en ese momento, la plataforma se desplomó y cayó al vacío caída libre.

52. Si la dejadez e indiferencia de los dueños, gerencia y supervisores de DSC para con la vida,

integridad física y salud del Sr. Rodríguez constituye conducta intencional.[49]

Por otro lado, debemos determinar si es de aplicación la Ley Núm. 45-1935[50] o si el accidente ocurrió por actos intencionales y, de esta manera, determinar si aplica alguna de las cláusulas de exclusión. Es importante hacer énfasis en que la causa de acción que ostentaba el Sr. Rodríguez Pérez ha sido desestimada hasta que la CFSE realice una determinación final. No obstante, queda pendiente la causa de acción en cuanto a la Sra. Díaz Rivera, la Sociedad Legal de Gananciales y el menor D.R.D., los cuales no están excluidos totalmente de la póliza de seguros. Puntualizamos que, para que proceda una sentencia sumaria, es necesario probar la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Por existir controversia de hechos materiales, no procede emitir Sentencia Sumaria Parcial.

Por otro lado, en el caso ante nos, el Foro de Instancia emitió *Resolución* en la cual realizó varias interpretaciones en cuanto a la póliza de seguros otorgada por Deportes SC y Universal, específicamente en cuanto al CGL, el endoso de *Employers Liability* y el endoso correspondiente a Inversiones CI. Por su parte, el Foro Primario concluyó que, en cuanto al CGL y el endoso de *Employers Liability*, específicamente las cubiertas por *"bodily injury"* y *"bodily injury by accident"*, los daños que provienen de una conducta intencional están excluidos. Además, entendió que, de aplicar la inmunidad patronal bajo la Ley del Sistema de Compensaciones por Accidentes del Trabajo a Deportes SC no le corresponde resarcir a la Familia Rodríguez-Díaz por los daños sufridos. Adicionalmente, el Tribunal de Primera Instancia concluyó que no hay cubierta a favor de Deportes SC por *"bodily injury"* bajo el CGL ya que, el accidente

---

[49] Véase apéndice del recurso KLCE202300892, págs. 53-54.
[50] Ley del Sistema de Compensaciones por Accidentes del Trabajo, *supra*, 11 LPRA sec. 1.

del Sr. Rodríguez Pérez sucedió durante el curso del trabajo que realizaba para Deportes SC como empleado. Siendo así, los reclamos de la Sra. Díaz Rivera, la Sociedad Legal de Gananciales y el menor D.R.D. no pueden ser consideradas por disposición de las cláusulas de exclusión del CGL.

En cuanto a la interpretación del endoso *Employers Liability*, el Foro Primario entendió que existen dos (2) cubiertas, *"bodily injury"* y *"bodily injury by accident"* la cuales son diferentes y tienen sus propias exclusiones. A tenor con lo anterior el Tribunal de Primera Instancia determinó que para el endoso de *Employers Liability* solo es de aplicación la cubierta de "*bodily injury by accident*", la cual no excluye expresamente los accidentes de empleados mientras que estos llevan a cabo tareas relacionadas al negocio y tampoco excluye a los familiares de los empleados que sufrieron el daño.

Discutiremos inicialmente las cubiertas de "*bodily injury*" y "*bodily injury by accident*" según establecidas en la póliza de seguros. El CGL define, el "*bodily injury*" como *"bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."*[51] En cuanto a esta cobertura el CGL establece como exclusiones: **(1) las acciones intencionales, (2) las compensables por leyes del trabajador, (3) los accidentes que son ocasionados al realizar acciones correspondientes al curso de los negocios.**[52]

Ahora bien, en cuanto al endoso de *Employers Liability* es meritorio señalar que este es un "Stop Gap" el cual tiene como propósito suplementar la protección provista a los empleados por los sistemas de compensación por accidentes del trabajo. Sin embargo, la propia cubierta establece lo siguiente: "this

---

[51] Véase apéndice del recurso KLCE202300892, pág. 272.
[52] *Id.*, pág. 261.

endorsement modifies insurance provided under the following: Comercial General Liability Coverage Part". Siendo así, entendemos que el mencionado endoso debe ser interpretado de manera separada al CGL.

Por ello, el endoso *Employers Liability* provee cobertura para las sumas que el asegurado se vea obligado a pagar bajo las leyes de Puerto Rico por los daños sufridos que correspondan a la cobertura de *"bodily injury by accident"*.[53] Este es definido como "bodily injury, sickness or disease sustained by a person, including death, resulting from an accident. A disease is not a "bodily injury by accident unless it results directly from *"bodily injury by accident."*[54] Dicha cobertura excluye los actos intencionales cometidos por el asegurado, si se puede razonablemente creer que la ocurrencia de dicho daño era prácticamente inevitable. No obstante, a diferencia del *"bodily injury"*, no se excluyen las acciones de empleados llevadas a cabo como tareas del negocio ni a los familiares del empleado que sufrieron daños.[55]

Lo cierto es que, en cuanto al endoso de *Employers Liability*, la propia póliza distingue las cubiertas de *"bodily injury"* y *"bodily injury by accident"*. De hecho, el inciso (H) del mencionado endoso dice lo siguiente: **"For the purposes of this endorsement, the definition of "bodily injury" does not apply."**[56] (Énfasis nuestro). El Tribunal de Primera Instancia realizó la interpretación correcta ya que no son de aplicación las exclusiones de la cobertura de *"bodily injury"*, sino las de *"bodily injury by accident"*. Es necesario enfatizar que el Tribunal Supremo ha señalado que en cuanto a las cláusulas de exclusión que tienen como propósito limitar la

---

[53] *Id.*, págs. 311-312.
[54] *Id.*, pág. 314.
[55] *Id.*, pág. 312.
[56] *Id.*, pág. 314.

cobertura establecida en el acuerdo principal, **deben interpretarse restrictivamente en contra del asegurador**.

Además, el propio endoso de *Employers Liability* establece en el inciso (c) lo siguiente:

> the damages we will pay, where recovery is permitted by law, include damages:
> (1) For:
> (a) Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee",
> (b) Care and loss of services, and
> **(c) Consequential "bodily injury by accident" or "bodily injury by disease" to spouse, child, parent, brother or sister of the injured "employee".**[57] [...] (Énfasis nuestro).

**A tenor con lo interpretado por el Tribunal de Primera Instancia, el endoso de *Employers Liability* no excluye totalmente a los familiares de los empleados que sufrieron daños, los cuales tienen una causa de acción bajo el Art. 1802 del Código Civil del 1930.** Por tanto, mediante una interpretación restrictiva y no rebuscada según establecido por el Tribunal Supremo[58], resulta forzoso concurrir con la interpretación del foro primario.

Por otro lado, pasamos a resolver los restantes tres errores en conjunto por estos estar intrínsecamente relacionados entre sí.

En el segundo, tercer y cuarto error Universal alegó que el Tribunal de Primera Instancia no actuó correctamente al determinar que el endoso del asegurado adicional es oscuro y ambiguo e interpretarlo a favor del asegurado. A tenor con lo anterior, el Foro de Instancia determinó que no estaba claro si Inversiones CI se subrogaba a los derechos de Deportes SC por lo que este podría tener cubierta, ya que el Sr. Rodríguez Pérez no es su empleado.

En nuestro ordenamiento jurídico está establecido que cuando las cláusulas de un contrato son oscuras y ambiguas estas

---

[57] *Id.*, pág. 312.
[58] *Serrano Picón v. Multinational Life Insurance Co.*, *supra*.

deben ser interpretadas a favor del asegurado. Entendemos que esto se aplica a la póliza de seguro presentada ante nos. Tomando esto en consideración, pasamos a interpretar el endoso del asegurado adicional el cual establece lo siguiente:

> A. Section II – Who is an insured is amended to include as an additional insured the person(s) or organization(s) shown in the schedule but only with respect to liability for "bodily injury", "Property Damages" or "personal and advertising injury" **caused in whole or in part by your acts or omissions or the acts or omissions of those acting on your behalf**:
> 1. In the performance of **your ongoing operations**;
> **2. In connection with your premises owned by or rented to you.**
> 1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
> 2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.[59]

Según el endoso de asegurado adicional, Inversiones CI es un asegurado cuyo endoso está limitado a la cubierta de *"bodily injury"*, en específico *"employees of the insured"*. No obstante, a pesar de no existir controversia de que el Sr. Rodríguez Pérez no es un empleado de Inversiones CI, el Foro de Instancia entendió que no queda del todo claro si la intención del endoso es que Inversiones CI se subrogue a los derechos de Deportes SC, ya que el endoso de nada dispone en cuanto a esto. Por tanto, concurrimos con el foro *a quo* de que permanece la interrogante de si las exclusiones del endoso de *Employers Liability* son de igual aplicación a Inversiones CI, debido al lenguaje de modificación utilizado en dicho endoso y que nada dispone la póliza en cuanto a ello.

IV

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, en cuanto al caso **KLAN202300714**, confirmamos en cuanto a la desestimación sin perjuicio de la causa de acción del Sr. Rodríguez Pérez y modificamos la *Sentencia* dictada

---

[59] Véase apéndice del recurso KLCE202300892, pág. 408.

por el Tribunal de Primera Instancia, Sala de San Juan, para ordenar la paralización de los procedimientos en cuanto a Mayra Díaz Rivera, la Sociedad Legal de Gananciales y el menor D.R.D. hasta la culminación de los procesos en la Corporación del Fondo del Seguro del Estado.

Por otro lado, en cuanto al caso **KLCE202300892** expedimos el recurso de *Certiorari* y confirmamos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala de San Juan.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones